437 F.2d 352
 Joe HILL, Individually and d/b/a A-1 Auto Enterprises, Plaintiff-Appellant,
v.
CITY OF EL PASO, TEXAS, George Rodriguez, Jr., Municipal Court Judge for the City of El Paso, Texas and Myron Davis, Defendants-Appellees.
 No. 29844.
 United States Court of Appeals, Fifth Circuit.
 January 5, 1971.
 
 Gerald B. Shifrin, El Paso, Tex., for plaintiff-appellant.
 Travis White, City Atty., John C. Ross, Wade Adkins, Asst. City Attys., El Paso, Tex., for City of El Paso and George Rodriguez, Jr.
 Before JONES, GEWIN and CLARK, Circuit Judges.
 CLARK, Circuit Judge:
 
 
 1
 It is difficult to appreciate immediately that the resolution of a question so mundane as what constitutes "junk" in El Paso, Texas could create a legal Hydra. The proliferating problems and obstacles stem from the notion by one litigant that he will somehow fare better in a federal forum than in pending State court civil and criminal proceedings, because it ignores the basic truth that neither the State nor the federal court systems can discharge the function of preserving justice under law for the citizens of this republic without a scrupulous regard for the rightful independence of the other system. Mutual interdependence and the need for a harmonious working relationship between the systems dictate that we affirm the district court's refusal to allow this litigant to swap systems in mid-course.
 
 
 2
 Joe Hill, the owner and operator of A-1 Auto Enterprises, filed a complaint in the United States District Court based upon 42 U.S.C.A. § 1983 (1970) invoking jurisdiction under 28 U.S.C.A. § 1343 (1962) and 28 U.S.C.A. §§ 2201 and 2202 (1959). He sought an injunction against further prosecution of pending State civil and criminal proceedings against him, a declaratory judgment that the municipal ordinance on which the State suits depended was voidly vague, and compensatory and exemplary damages. The named defendants were the City of El Paso, Texas; George Rodriguez, Jr., a municipal court judge of the City of El Paso; and Myron Davis, Hill's next door neighbor.[1]
 
 
 3
 The complaint alleged the following facts. The City through officials of its zoning department, the Judge in his judicial capacity, and Davis as a complaining witness, were conspiring to violate Hill's civil rights by instituting a civil action for a prohibitory injunction and numerous municipal court criminal proceedings to curtail or proscribe his commercial operations. For a number of years the City of El Paso had objected to his use of certain leased premises in the city for a business which he described as a public automobile garage claiming it was in violation of the zoning ordinances of the city. The present zoning classification, C-3, which applied to his property, expressly allowed the use and maintenance of the business he was conducting.[2] The named defendants had subjected Hill to continual harassment and prosecution by falsely claiming the business he was conducting on his leasehold premises was not a public garage, but rather was a junk yard, a use not permitted in a C-3 zone. The city ordinance which defined "junk" was indefinite, ambiguous, standardless and unconstitutional.[3] In the alternative it was alleged that plaintiff did not sell or maintain any junk, as defined in the city ordinance, in the operation of his business on the subject premises. In addition to seeking an injunction against the pending State court litigation, the complaint sought a declaration of invalidity of the ordinance defining junk, and actual and punitive damages. In capsule, the substance of Hill's complaint is twofold: (1) the business that he is operating on the subject premises is a public garage within the meaning of the city's zoning requirements and is not a junk yard; and (2) the El Paso ordinance defining "junk" is unconstitutionally vague.
 
 
 4
 No answer was filed in the court below nor was any evidence taken. However, the record contains a transcribed colloquy between the court and counsel for Hill, in which it was asserted that Hill's business operations, at least in part, involved the presence of used automobiles and parts connected to such automobiles on the premises. It appears that Hill sells parts he takes from these old automobiles for further service as used parts. He does not sell these items as scrap or for any use other than that for which the part was originally intended.
 
 
 5
 The district court dismissed Hill's complaint without prejudice on the ground that he failed to exhaust his State remedies. Although we do not agree with the reason assigned for the district court's action, we affirm.
 
 
 6
 I. PARTIES.
 
 
 7
 42 U.S.C.A. § 1983 does not create a right of action against either the City of El Paso or its Municipal Judge. In terms, Section 1983 applies to any "person" who deprives another of a protected right. The Supreme Court in Monroe v. Pape, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961), held that a municipal corporation is not a person within the meaning of this statute. Since Judge Rodriguez is being sued in his judicial capacity and since the subject matter of the action involves the performance of his official role, Pierson v. Ray, 386 U. S. 547, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967) makes the statute inapposite as to him also. Guedry v. Ford, 431 F.2d 660 (5th Cir. 1970). In view of the death of the defendant, Davis, and the absence of any effort by Hill to comply with Fed.R.App.P. 43(a) the continued vitality of the action, which is left with no proper parties defendant, is dubious to say the least.
 
 
 8
 II. FEDERAL INJUNCTIONS AGAINST PENDING STATE COURT PROCEEDINGS.
 
 
 9
 One ground of relief prayed for was a prohibitory injunction against the maintenance of civil and criminal actions in courts of the State of Texas. Perhaps unwittingly but ultimately unmeritoriously, Hill has raised an issue which in a different factual setting could have portentous and perplexing dimensions. 28 U.S.C.A. § 2283 (1965) provides:
 
 
 10
 A court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by an Act of Congress or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments.
 
 
 11
 Most recently in Atlantic Coast Line Railroad Company v. Brotherhood of Locomotive Engineers, 398 U.S. 281, 90 S. Ct. 1739, 26 L.Ed.2d 234 (1970) the Supreme Court has this year interpreted this restraint on courts of the United States in stern and unmistakable language.
 
 
 12
 In 1954 when this Court interpreted this statute, it stated: "This is not a statute conveying a broad general policy for appropriate ad hoc application. Legislative policy is here expressed in a clear-cut prohibition qualified only by specifically defined exceptions." Amalgamated Clothing Workers v. Richman Brothers, 348 U.S. 511, 515-516, 75 S.Ct. 452, 455, 99 L.Ed. 600 (1955). Since that time Congress has not seen fit to amend the statute and we therefore adhere to that position and hold that any injunction against state court proceedings otherwise proper under general equitable principles must be based on one of the specific statutory exceptions to § 2283 if it is to be upheld. Moreover since the statutory prohibition against such injunctions in part rests on the fundamental constitutional independence of the States and their courts, the exceptions should not be enlarged by loose statutory construction. Proceedings in state courts should normally be allowed to continue unimpaired by intervention of the lower federal courts, with relief from error, if any, through the state appellate courts and ultimately this Court.
 
 
 13
 * * * Any doubts as to the propriety of a federal injunction against state court proceedings should be resolved in favor of permitting the state courts to proceed in an orderly fashion to finally determine the controversy. The explicit wording of § 2283 itself implies as much, and the fundamental principle of a dual system of courts leads inevitably to that conclusion.
 
 
 14
 See also Mistrot v. Wade, 433 F.2d 1056 (5th Cir. 1970).
 
 
 15
 In the pending case, however, the complaint alleges a cause of action based upon 42 U.S.C.A. § 1983 and 28 U.S.C.A. § 1343. The question of whether these are Acts of Congress which expressly authorize injunctions to stay proceedings in a State court is an important but unresolved question at this juncture in our jurisprudence. See Le Flore v. Robinson, 434 F.2d 933 (5th Cir. 1970), Sheridan v. Garrison, 415 F.2d 699 (5th Cir. 1969), and Machesky v. Bizzell, 414 F.2d 283 (5th Cir. 1969), which discuss the impact of Dombrowski v. Pfister, 380 U.S. 479, 85 S.Ct. 1116, 14 L.Ed.2d 22 (1965), Cameron v. Johnson, 381 U.S. 741, 85 S.Ct. 1751, 14 L.Ed.2d 715, and Zwickler v. Koota, 389 U.S. 241, 88 S.Ct. 391, 19 L. Ed.2d 444 (1967). See also C. Wright, Law of Federal Courts 183-184 (2d ed. 1970); Maraist, Federal Injunctive Relief against State Court Proceedings: The Significance of Dombrowski, 48 Texas L.Rev. 535 (1970); and The Federal Anti-Injunction Statute and Declaratory Judgments in Constitutional Litigation, 83 Harvard L.Rev. 1870 (1970).
 
 
 16
 When taken in light of the fact that (1) no First Amendment rights are asserted or arguably involved, and (2) Hill fails to show any danger of irreparable injury either "great" or "immediate"; Shaw v. Garrison, 293 F.Supp. 937 (E.D.La.1968), aff'd 393 U.S. 220, 89 S.Ct. 453, 21 L.Ed.2d 392 (1968), and Douglas v. City of Jeanette, 319 U.S. 157, 63 S.Ct. 877, 87 L.Ed. 1324 (1943) compel us to the positive conclusion that this case presents a factual setting in which Section 2283 and the caveats of the Atlantic Coast Line case forbade the injunctive relief against the pending Texas civil and criminal proceedings which Hill sought. See Hughes v. District Attorney for Atlanta, Georgia, et al., 436 F.2d 568 (5th Cir. 1970).
 
 
 17
 III. ABSTENTION.
 
 
 18
 There is an equally substantial reason why the action of the lower court should be affirmed in toto. The complaint presented an appropriate, indeed a compelling, cause for the application of the doctrine of abstention. We are presented with the classic action where a federal forum can and should avoid the decision of a constitutional issue which may and probably will disappear when the appropriate State forum decides a simple but unsettled question of State law.
 
 
 19
 A brief review of abstention decisions almost always begins with Railroad Commission of Texas v. Pullman Company, 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941), which stands for the proposition that if a local ordinance is unclear on its face but a State court decision can remove any ambiguity and possibly avoid the need for decision of a constitutional question, a federal court ought to exercise its discretion to abstain. See generally C. Wright, Law of Federal Courts 196 et seq. (2d ed. 1970).
 
 
 20
 Hill argues that a definition of junk more definite than that used in the El Paso ordinance, has been held invalid by the Texas courts in Ex parte Scott, 130 Tex.Cr.R. 29, 91 S.W.2d 748 (1936), on the grounds that the definition went beyond the permissible bounds of the State police power. El Paso argues that its ordinance was drafted with express knowledge of the Scott decision and that its ordinance is consistent with the principles laid down in Scott. Such arguments are plainly fundamental matters of State law, most appropriate for State court determination. It is unseemly for court systems of concurrent jurisdiction to engage in a tug of war over the same case. Since our system of federalism contemplates that State courts are fully as competent to adjudicate federal questions and to protect federal rights as are federal courts, the latter should be slow to intervene where State court proceedings are so clearly the more appropriate. Leiter Minerals, Inc. v. United States, 352 U.S. 220, 77 S.Ct. 287, 1 L.Ed.2d 267 (1957). In City of Meridian v. Southern Bell Telephone Company, 358 U.S. 639, 79 S.Ct. 455, 3 L.Ed.2d 562 (1959), the Supreme Court in discussing this delicately balanced area of the law stated:
 
 
 21
 Proper exercise of federal jurisdiction requires that controversies involving unsettled questions of state law be decided in the state tribunals preliminary to a federal court's consideration of the underlying federal constitutional questions * * * This is especially desirable where the questions of state law are enmeshed with the federal questions. * * * Here, the state law problems are delicate ones, the resolution of which is not without substantial difficulty — certainly for a federal court * * * In such a case, when the state court's interpretation of the statute or evaluation of its validity under the state constitution may obviate any need to consider its validity under the Federal Constitution, the federal court should hold its hand, lest it render a constitutional decision unnecessarily. (Citations omitted 358 U.S. at 640, 79 S.Ct. at 456.
 
 
 22
 The principle retains its full vitality today. Reetz v. Bozanich, et al., 397 U.S. 82, 90 S.Ct. 788, 25 L.Ed.2d 68 (1970). It precisely befits the case at bar since we do not deal (a) with issues intimately entwined with the commerce clause, see e.g., Hostetter v. Idlewild Bon Voyage Liquor Corp., 377 U.S. 324, 84 S.Ct. 1293, 12 L.Ed.2d 350 (1964) and Pike v. Bruce Church, Inc., 397 U.S. 137, 90 S. Ct. 844, 25 L.Ed. 174 (1970); nor (b) with repressions of First Amendment rights, see e. g. Dombrowski v. Pfister and Zwickler v. Koota, supra; nor (c) with other issues having national, as opposed to intrastate significance.
 
 
 23
 The question of when the doctrine of abstention ought to be invoked is a matter that involves the exercise of discretion, Harman v. Forssenius, 380 U.S. 528, 85 S.Ct. 1177, 14 L.Ed.2d 50 (1965), and must be approached on a case by case rather than any general principle basis, Baggett v. Bullitt, 377 U.S. 360, 84 S.Ct. 1316, 12 L.Ed.2d 377 (1964). The fact setting in the case at bar involves the routine application of zoning regulations. This is distinctly a feature of local government. We have recognized that these grass roots procedures are outside the general supervisory power of federal courts. Zayre of Georgia, Inc. v. City of Marietta, 416 F. 2d 251 (5th Cir. 1969). Just as is true in cases where the bar of Section 2283 has received its most relaxed application, some significant abridgement or chilling of First Amendment rights has been intimately entwined in prior decisions of this Circuit holding abstention discretion was abused. See, e.g., Davis v. Francois, 395 F.2d 730 (5th Cir. 1968), Hunter v. Allen, 422 F.2d 1158 (5th Cir. 1970) and Moreno v. Henckel, 431 F.2d 1299 (5th Cir. 1970).
 
 
 24
 While the better practice in cases where the doctrine of abstention is to be applied is for the federal forum to retain jurisdiction rather than dismissing the action without prejudice, Zwickler v. Koota, supra, this Circuit has affirmed such dismissals in abstention situations. Blume v. City of Deland, 358 F.2d 698 (5th Cir. 1966), Brown v. Pearl River Valley Water Supply District, 292 F.2d 395 (5th Cir. 1961).
 
 
 25
 A dismissal without prejudice because abstention is to be applied does not require Hill to litigate his federal claims in the pending State court proceedings. He clearly has the right to inform the State courts of what federal claims, if any, he intends to litigate there and to reserve any remaining federal rights for future litigation in the federal court, in the event such litigation becomes necessary. England v. Louisiana State Bd. of Medical Examiners, 375 U.S. 411, 84 S.Ct. 461, 11 L.Ed. 2d 440 (1964). Abstention does not involve an abdication of federal jurisdiction, only the postponement of its exercise.
 
 
 26
 Although it ought to be so obvious as to be redundant it appears apt to express that every asserted legal wrong neither needs nor finds a federal remedy. We hold that the court below committed no error in remitting Hill to the courts of the State of Texas for a resolution of the issue of the validity of El Paso's ordinance defining junk in the pending State court proceedings.
 
 
 27
 Affirmed.
 
 
 
 Notes:
 
 
 [1]
 We are advised that Davis is now deceased
 
 
 [2]
 El Paso Municipal Code, Section 25-30 (a) (5)
 
 
 [3]
 The language of the Ordinance, which was adopted in 1950, is as follows:
 Sec. 14-89. Definitions.
 The term "junk" as used in this division means old metal, glass, paper, cordage, rags, bones, rubber or other waste which may be treated so as to be used again in some form; vehicles or machines which are worn out and intended for scrapping; or any article or substance commonly considered to be junk for the purpose of trade. The term does not include secondhand articles or substances which are still usable for the purpose for which they were originally intended and are sold with a view to such further original use; provided, junk dealers and their employees shall not be excused from compliance with any of the provisions of this division as to any particular article or substance because the same or part thereof is capable of further use for its original purpose.