John MELTON et al., Plaintiffs,

v.

CITY OF ATLANTA, GEORGIA, a municipal corporation, Sam Massell, Mayor, Atlanta, Georgia, Herbert Jenkins, Chief, Atlanta Police Department, Louis Slaton, District Attorney, Atlanta Judicial Circuit, Fulton County, Georgia, Hinson McAuliffe, Solicitor, Criminal Court of Fulton County, Fulton County, Georgia, Defendants.

Civ. A. No. 14391.

United States District Court,
N. D. Georgia,
Atlanta Division.

Feb. 5, 1971.

Hendon & Henley, Decatur, Ga., for plaintiffs.

Tony H. Hight, Asst. Dist. Atty., Atlanta Judicial Circuit, Atlanta, Ga., and Thomas E. Moran, Asst. Sol. Gen., Criminal Court of Fulton County, Atlanta, Ga., for Lewis Slaton and Hinson McAuliffe.

Henry L. Bowden and John E. Dougherty, Atlanta, Ga., for Sam Massell and Herbert Jenkins.

Before MORGAN, Circuit Judge, and SMITH, Chief District Judge and MOYE, District Judge.

### OPINION AND ORDER

PER CURIAM.

### I.  STATEMENT OF THE FACTS

This suit is brought by plaintiffs as a class action, said plaintiffs claiming to represent all present and future Atlanta policemen and the officers and members of the Fraternal Order of Police [1] (herein "FOP").

A three-judge court was convened pursuant to 28 U.S.C. § 2284 to hear the attack upon Georgia Laws of 1953, November session, page 624, codified as Ga.Code Ann. § 54–909 and § 54–9923.[2]

The event which precipitated the suit was a request made upon the Atlanta City Attorney, Mr. Henry L. Bowden, by Atlanta Alderman Q. V. Williamson for a determination as to whether the FOP violates any state statutes. (The record is unclear as to why the determination was requested, but apparently it had to do with use of police station facilities by the FOP.) In response to the request, Mr. Bowden replied, in a letter to Alderman Williamson, a copy of which is attached to the complaint as Exhibit A,

---

1. The Fraternal Order of Police is an unincorporated fraternal and social organization wherein the members are associated, *inter alia*, " * * * to promote and foster the enforcement of law and order; * * * to encourage social, charitable and educational activities among police-men; * * * to cultivate a spirit of fraternalism and mutual helpfulness among members and the people we serve * * * " Preamble, Constitution, Fraternal Order of Police, Plaintiff's Exhibit 1, page 3.

2. Georgia Code Annotated § 54–909    *Membership of policemen in labor unions prohibited.*—It is hereby declared to be the public policy of the State of Georgia that peace officers who may be called in time of labor strikes to protect lives and property and to preserve the peace should be fair and impartial as between both employers and employees. That to insure an impartial police force in the State of Georgia no person employed by any city or county within the State of Georgia or by the State of Georgia as a policeman shall join or belong to any labor union.

Georgia Code Annotated § 54–9923    *Violation of section 54–909 relating to membership of policemen in labor unions.*—Any person violating the terms of section 54–909, which prohibits policemen from belonging to labor unions, shall be guilty of a misdemeanor and upon conviction thereof shall be punished as provided in this Code for the punishment of persons convicted of misdemeanors.

that, in his opinion, the FOP is a union as defined in Ga.Code Ann. § 54–701[3] and membership therein by Atlanta policemen would be a violation of state law.

Plaintiffs attack the two statutes as being unconstitutional on their face because of fatal overbreadth. They allege that the statutes infringe upon their First Amendment right of assembly, which constitutional right is enforceable against defendants through the Fourteenth Amendment. The relief asked is a declaratory judgment that the statutes are unconstitutional, and a permanent injunction restraining defendants from enforcing the statutes.

## II.   JURISDICTIONAL   QUESTIONS

Defendant City of Atlanta has moved to dismiss the complaint for failure to state a claim upon which relief can be granted, based on the holding in Monroe v. Pape, 365 U.S. 167, 81 S.Ct. 473, 5 L. Ed.2d 492 (1960), that a municipality is not a "person" within the meaning of 42 U.S.C. § 1983. Section 1983 provides, in pertinent part, that "Every *person* who, under color of any statute, ordinance, regulation * * * subjects * * * any citizen of the United States * * * to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity or other proper proceeding for redress." (Emphasis added)

The Fifth Circuit has recently considered § 1983 on two occasions. In Harkless v. Sweeny Independent School District, 427 F.2d 319 (1970), petition for cert. denied, 400 U.S. 991, 91 S.Ct. 451, 27 L.Ed.2d 439 (1970), the Court considered the identical question before this Court. In a considered and thorough opinion reviewing all of the cases, Judge Bell, writing for the Court, concluded that the *ratio decidendi* of Monroe v. Pape would limit that case to damage suits against a municipality in a respondeat superior situation. The Court said:

> We therefore conclude that § 1983 includes school district trustees and school superintendents, acting in their representative as well as their individual capacities, within the meaning of "person" as the term is used in § 1983 for the purposes of the equitable relief sought here.

427 F.2d at 323. This holding would, of course, make a municipality amenable to suit under § 1983 for the purpose of declaratory relief and injunction.

The other case by the Fifth Circuit is Hill v. City of El Paso, 437 F.2d 352 (5th Cir. 1971). The Court there held that neither a city official engaged in the performance of his official duty, nor a municipality would be subject to a suit for declaratory relief or injunction under § 1983, basing its reasoning upon Monroe v. Pape, *supra*. There are at least two alternative grounds for the Fifth Circuit's affirmance of the District Court, and it seems that the language holding § 1983 inapplicable to municipalities is *obiter dicta*. In addition, if the Court's alternative holding that the District Court should have abstained from exercising jurisdiction were followed, it would not have been necessary to reach the § 1983 question. Finally, it is obvious that the Court in *Hill* did not consider *Harkless*, or the line of cases cited therein.

■ This Court is persuaded by the reasoning in *Harkless*, and holds that the City of Atlanta is a "person" within

---

3.  Georgia Code    *"Labor organization" defined.*—When used in this Chapter,
    Annotated          the term "labor organization" means any labor union or or-
    § 54–701           ganization or agency or employee representation, committee
                       or plan, in which employees participate and which exists for
                       the purpose, in whole or in part, of dealing with employers
                       concerning grievances, labor disputes, wages, rates of pay,
                       hours of employment, or conditions of work. (Acts 1941, p.
                       515.)

the meaning of § 1983 for the purpose of a suit seeking declaratory relief and injunction. *Accord,* Moreno v. Henckel, 431 F.2d 1299 (5th Cir. 1970); Atkins v. City of Charlotte, 296 F.Supp. 1068 (W.D.N.C.1969) (Three-Judge Court); Adams v. City of Park Ridge, 293 F.2d 585 (7th Cir. 1961); Schnell v. City of Chicago, 407 F.2d 1084 (7th Cir. 1968). It follows that the complaint does state a claim upon which relief can be granted, and the motion to dismiss is denied.

The State of Georgia, upon which a copy of the complaint and order convening this three-judge court was served pursuant to 28 U.S.C. § 2284, has provided the Court with a very fine *amicus curiae* brief in defense of the statutes attached, and *inter alia,* argues that there is not an "actual controversy" present within the meaning of the declaratory judgment statute.

■ The Court cannot, of course render an advisory opinion, Golden v. Zwickler, 394 U.S. 103, 89 S.Ct. 956, 22 L.Ed.2d 113 (1969), and can only act if the controversy is "[D]efinite and concrete, touching the legal relations of parties having adverse legal interests." International Longshoremen's Ass'n, AFL–CIO v. Seatrain Lines, 326 F.2d 916 (2d Cir. 1964). In the context of the Declaratory Judgment Act the word "actual", as modifying "controversy", is in the statute for emphasis only, and neither increases nor decreases the need for a "controversy". Southern Ry. Co. v. Brotherhood of Locomotive Firemen and Engineers, 223 F.Supp. 296 (M.D. Ga.1962), aff'd, 324 F.2d 503 (5th Cir. 1963).

■ There is an "actual controversy" present in this case.[4] This is evidenced by the letter to Mr. Bowden from Alderman Williamson, and the reply thereto. Moreover, counsel for defendant City of

Atlanta advised the Court at the hearing that the natural sequence of events, based on the ruling by Mr. Bowden, would be to institute disciplinary proceedings or recommend prosecution. It is enough that the "Damoclean" presence of the statute hangs over the FOP. The defendants, state and municipal officials, uphold, as they must, state laws applicable to them and which have not hitherto been held unconstitutional; plaintiffs, as is their right, now attack the constitutionality of these laws.

■ In addition plaintiffs allege that "plaintiffs, and members of their class have been limited in promotions, terms and conditions of employment, and threatened with loss of their jobs and with criminal prosecutions * * *" Complaint, ¶ V(b). Those allegations are denied by defendant. Although the Court did not feel it necessary to hear any evidence on these allegations, it may consider the issue raised as evidencing to some extent that there is an actual controversy here present within the meaning of 28 U.S.C. § 2201.

### III. THE CONSTITUTIONAL QUESTION

At the outset it is important to note what plaintiffs are *not* contending. Plaintiffs are not contending that the state does not have a legitimate interest in protecting the health, welfare and safety of its citizens, but merely that it has attempted to accomplish that end by an overbroad statute. Neither are plaintiffs contending that the City of Atlanta or its police department could be compelled to negotiate with the FOP or could not prohibit or limit strikes. Plaintiffs only contend that Ga.Code Ann. §§ 54–909 and 54–9923 attempt to accomplish a legitimate end (securing complete impartiality on the part of police officers particularly in labor strife

---

4. While originally the "controversy" apparently centered on the question of whether the FOP is or is not a union, it appears all parties now agree that the FOP is a union within the meaning of

the Georgia statutes here involved, and the controversy is over the question of the constitutionality, and therefore enforceability, of Georgia Code §§ 54–909, 54–9923.

situations) in an unconstitutional manner, and are therefore unconstitutional on their face.

■ Plaintiffs case is premised upon the right to assemble guaranteed by the First and Fourteenth Amendments. There can be no doubt that the right of association is protected by the First Amendment. Aptheker v. Secretary of State, 378 U.S. 500, 84 S.Ct. 1659, 12 L. Ed.2d 992 (1964); Gibson v. Florida Legislative Investigation Committee, 372 U.S. 539, 83 S.Ct. 889, 9 L.Ed.2d 929 (1963); Bates v. City of Little Rock, 361 U.S. 516, 80 S.Ct. 412, 4 L.Ed.2d 480 (1960); N.A.A.C.P. v. Alabama ex rel. Patterson, 357 U.S. 449, 78 S.Ct. 1163, 2 L.Ed.2d 1488 (1958). By the same token, there can be no doubt that the State has a legitimate interest in protecting the welfare of its citizens. The conflict between these two laudible *objectives is found in the second sentence in § 54-909.* That sentence provides: "That to insure an impartial police force in the State of Georgia, no person employed by any city or county within the State of Georgia, or by the State of Georgia as a policeman shall join or belong to any labor union."

The Supreme Court, in N.A.A.C.P. v. Alabama ex rel. Flowers, said:

This Court has repeatedly held that a governmental purpose to control or prevent activities constitutionally subject to state regulation may not be achieved by means which sweep unnecessarily broadly and thereby invade the area of protected freedoms. See *id.* 357 U.S., at 463–464, [78 S.Ct. at 1172–1173]. " * * * [T]he power to regulate must be so exercised as not, in attaining a permissible end, unduly to infringe the protected freedom." Cantwell v. Connecticut, 310 U.S. 296, 304, [60 S.Ct. 900, 903, 84 L.Ed. 1212]. "* * * [E]ven though the governmental purpose be legitimate and substantial, that purpose cannot be pursued by means that broadly stifle fundamental personal liberties when the end can more narrowly be achieved." Shelton v. Tucker, 364 U.S. 479, 488, [81 S.Ct 247, 252, 5 L.Ed.2d 231].

377 U.S. 288, at 307–308, 84 S.Ct. 1302, at 1314, 12 L.Ed.2d 325 (1963). Such is the case here, plaintiff argues, and the state could accomplish the objectives of the preamble of § 54–909 without stifling the plaintiffs' rights.

The case most closely in point is Atkins v. City of Charlotte, 296 F.Supp. 1068 (W.D.N.C.1969) (Three-Judge Court). That court held two North Carolina statutes unconstitutional because of overbreadth, those statutes being closely related to the two before this Court. There, as here, the state interest was that the firemen (plaintiffs) not strike, and while the Court found frightening "The thought of fires raging out of control in Charlotte while firemen, out on strike, Neroicly watch the flames * * *", *id.,* at 1076, it nevertheless held that the state could avoid that result by narrower means, and held the North Carolina statutes involved facially unconstitutional.

The State of Georgia attempts to distinguish *Atkins* and similar cases on the grounds that policemen are different from firemen and teachers, and points out that of all Georgia employees only policemen are prohibited, by the statutes in question, from union affiliation. There is merit in that position. Policemen exercise a quasi-judicial function at the point of crime—choosing between perhaps conflicting stories of participants—enforcing their decisions with lethal weapons. No such functions are exercised by firemen whose function is simply to put out fires.

The State's interest in protecting its citizens from strikes and the problems attendant thereto is valid. The FOP Charter, however, contains a no-strike clause, *compare Atkins, supra,* at 1076; and even if it did not, the State could presumably enact a law preventing such

**320**

strikes. *See,* N.A.A.C.P. v. Alabama ex rel. Flowers, *supra.* But a no-strike clause will not insure the impartiality to which the Georgia statutes are directed.

In short, as admitted by Counsel for plaintiffs at the argument hereon, we are faced with the problem of weighing the plaintiffs' interests in their First Amendment rights and the defendants' interest in securing and having an impartial police force.[5] While the statutes here undoubtedly tend toward securing the desired impartiality, their practical effect in that direction would not appear so efficacious or certain as to offset or outweigh the obvious impairment in plaintiffs' First Amendment rights. This is particularly true here where, as we are informed by plaintiffs, the FOP has no members outside the Atlanta Police Department, and no affiliation with any organizations other than the national FOP.[6] We accept those assurances in ruling as we do.

■ It therefore appears to us that Ga.Code Ann. § 54–909 is fatally overbroad, particularly when read in conjunction with Ga.Code Ann. § 54–701, and we hold § 54–909 unconstitutional. In addition we find Ga.Code Ann. § 54– 9923 so inextricably tied to § 54–909 that it too must be held unconstitutional for the same reason.

We wish to make it clear, however, that we are not holding that the State may not prohibit strikes by state or municipal employees or prohibit collective bargaining between the state or municipality and a union. As we noted at the outset, plaintiffs do not so contend.

■ Finally, we are asked to enjoin the defendants from enforcing the statutes just held unconstitutional, to wit, Ga.Code Ann. § 54–909 and § 54–9923. As mentioned above, the Assistant City Attorney stated that he did not anticipate that these statutes would be enforced against plaintiffs, and this was before we held them unconstitutional. There is no reason this Court should anticipate that the City of Atlanta or other defendants would not abide by the decision of this Court, and this Court is not willing to do so. The Court finds no "compelling necessity" for an injunction here, and plaintiffs' request for injunctive relief is denied.

Declaratory judgment granted. Injunction denied.

It is so ordered.

---

5. See, J. Beaird, Labor Relations Policy For Public Employees: A Legal Perspective, 4 Georgia L.Rev. 110 (1969). Professor Beaird concludes: "Nevertheless, it seems reasonable that less drastic measures could achieve this goal." *Id.* at 122.

6. Counsel for plaintiff assured the Court at the hearing that the Atlanta Lodge of FOP was not affiliated with *any* other organization. The Court notes, however, that the exhibits in the case reflect an apparent affiliation with a national organization. This would not, however, change the Court's decision.

The FOP Charter, Art. II, Section 2, says: "The Fraternal Order of Police shall not strike or by concerted action cause a cessation of the performance of police duties, or induce other members or lodges to do likewise. The penalty for such action by any member, or subordinate lodge, shall be immediate expulsion from the Fraternal Order of Police." In connection therewith, it is clear to the Court that last summer there was a work stoppage or slowdown by members of the Atlanta Police force, of whom some were undoubtedly FOP members. Counsel for plaintiffs assured the Court at the hearing on this case that such action was in violation of Art. II, Section 2, *supra,* was not sanctioned by the FOP, and further, that it would not happen again.

No explanation was given as to why the sanctions of Section 2 were not invoked against FOP members participating in the work stoppage or slowdown.