Delores ROSS et al., Plaintiffs,

United States of America,
Plaintiff-Intervenor,

v.

HOUSTON INDEPENDENT SCHOOL
DISTRICT et al.,
Defendants-Appellants,

v.

Proposed Westheimer Independent School
District et al., Defendants-Appellees.

Delores ROSS et al., Plaintiffs,

United States of America, Plaintiff-Intervenor, Appellant,

v.

HOUSTON INDEPENDENT SCHOOL
DISTRICT et al.,
Defendants-Appellants,

v.

PROPOSED WESTHEIMER INDEPENDENT SCHOOL DISTRICT et al.,
Defendants-Appellees,

v.

HOUSTON TEACHERS ASSOCIATION,
Movant-Appellant.

In re HOUSTON INDEPENDENT
SCHOOL DISTRICT, Petitioner.

Nos. 77–1069, 77–1843, 77–1367
and 77–2281.

United States Court of Appeals,
Fifth Circuit.

Sept. 8, 1977.

William Key Wilde, Kelly Frels, J. Woodfin Jones, Houston, Tex., for Houston Independent Sch. Dist.

Weldon H. Berry, Houston, Tex., Joseph D. Rich, Asst. Atty. Gen., Civ. Rights Div., Washington, D. C., Abraham Ramirez, Jr., James E. Ross, Anna E. Stoll, Asst. U. S. Atty., Houston, Tex., Peter D. Roos, San Francisco, Cal., for defendants-appellees in 77-2281, 77-1069, 77-1843, 77-1367 and Ross.

Lynn Taylor, Austin, Tex., for State of Texas.

William C. Bednar, Jr., Austin, Tex., for Texas Ed. Agency.

Dennis J. Dimsey, Atty., Drew S. Days, III, Asst. Atty. Gen., App. Section, Civ. Rts. Div., Dept. of Justice, Washington, D. C., for defendants-appellees in 77–2281.

Edward B. McDonough, Jr., U. S. Atty., Houston, Tex., Vilma S. Martinez, San Francisco, Cal., for defendants-appellees in 77–1069.

James Gough, Asst. U. S. Atty., Houston, Tex., for the United States.

Ricardo DeAnda, Laredo, Tex., for Estrada, et al.

William Pannill, Houston, Tex., for Coalition to Preserve Houston, et al.

Grant Cook, Houston, Tex., for Spring Branch Ind. School Dist.

Jay D. Howell, Jr., Asst. City Atty., Houston, Tex., for City of Houston.

Walter W. Barnett, Atty., Dept. of Justice, Washington, D. C., Vincent F. O'Rourke, Atty., Washington D. C., for the United States.

Robert E. Hall, Houston, Tex., for Houston Teachers Assn.

William A. Harrison, James E. Ross, Houston, Tex., for defendants-appellees.

Before THORNBERRY, MORGAN and CLARK, Circuit Judges.

## BY THE COURT:

It is hard for the parties to remember and impossible for others to comprehend how the procedural matrix behind this school desegregation appeal became so complex. A considerable part of our appellate effort has been expended in unwinding the tangled skein, so that the basic issues posed may be decided.

The action was originally filed in the United States District Court for the Southern District of Texas against the Houston Independent School District (HISD) by the NAACP Legal Defense and Education Fund in 1956. As a result of this suit, HISD has been operating under a series of desegregation plans, the most recent of which was approved by the district court and modified and affirmed by this court on August 25, 1970. *Ross v. Eckels*, 434 F.2d 1140 (5th Cir. 1970), *cert. denied*, 402 U.S. 953, 91 S.Ct. 1614, 29 L.Ed.2d 123 (1971). In late 1970 and early 1971, soon after this most recent plan was implemented by HISD, a group of citizens living in the middle western portion of HISD began the organization of an independent school district designated the Westheimer Independent School District (WISD). The WISD area contains about 8,000 students with a racial makeup that is 88.9% white, 6.2% black, and 4.9% Hispanic. The entire HISD presently has a student body which is 44% white, 39.4% black, and 16.6% Hispanic. HISD added WISD as a third-party defendant to this desegregation suit. HISD, joined by the United States and the NAACP Legal Defense Education Fund, then moved to enjoin the creation and implementation of the proposed WISD on the basis that creation of such a splinter district would have an adverse effect on the desegregation of HISD.

On April 4, 1973, former Chief Judge Ben C. Connally issued a memorandum and order enjoining the Interim Board of Trustees of WISD from taking any further steps toward the creation and implementation of the proposed district. An injunction decree prohibiting the creation of the district was entered on April 30, 1973. It contained the following language:

It is ORDERED, ADJUDGED and DECREED that . . . [the] Interim Members of the Board of trustees of the Defendant, Westheimer Independent School District, and their successors in office, as well as the present and future agents, servants and employees of the Westheimer Independent School District and said successors in office, and all others acting in concert with them, be and they are hereby restrained and enjoined from any further acts relating to the creation and organization of the Westheimer Independent School District, including the prescribed statutory proce-

dures set out in Section 19.623 [19.263] of the Texas Education Code, until April 4, 1976.

It is further ORDERED, ADJUDGED and DECREED that after April 4, 1976, the Defendant Interim Board of Trustees of Westheimer Independent School District, or their successors in office, may pursue their statutory course for the creation and implementation of the Westheimer Independent School District if circumstances have changed to the degree that the reasons for this Injunction Decree are no longer valid. If they desire to do so, they must first give sixty (60) days' notice in writing of such intention to all of the parties to this suit. Further injunctive relief may be requested at that time by the opposing parties, if desired.

The three-year repose which followed was broken when the Mexican-American Plaintiff-Intervenors in this action filed a motion seeking further injunctive relief against creation of the proposed WISD.

WISD countered with a motion seeking to have the Southern District enjoin all parties from taking any action to halt the implementation of the WISD, in Texas state courts or in any forum other than the district court, on the grounds that such actions would interfere with the jurisdiction of the Southern District and derogate a 1973 stipulation by the parties as to WISD's status under state law. This was followed by WISD's formal notice of its intent to go forward with the implementation of the district. WISD then filed a unilateral "stipulation" (that the district court treated as a judicial admission) which stated:

> . . . the WISD and the Interim Members of the Board of Trustees of the WISD being interested solely in providing quality education for the students of its district, do hereby STIPULATE AND AGREE: To accept a proper role in the desegregation of the combined geographical area made up of the WISD and the HISD . . . ..

Within a week of this "stipulation," the United States and HISD filed motions to enjoin further implementation of WISD.

Both motions alleged that WISD had not shown the change of circumstances required by the 1973 injunction decree, and alleged that operation of the desegregation plan under the terms of WISD's "stipulation" would be administratively impracticable and would impede the desegregation of HISD. On the same day, the Houston Teachers Association petitioned for leave to intervene.

After Judge Connally's death, this matter was assigned to Judge Noel. Acting on his own motion and without an evidentiary hearing, Judge Noel announced that he was invoking the doctrine of abstention and staying all federal proceedings pending determination of the validity of WISD by appropriate state bodies. In addition, he terminated the 1973 injunction.

Subsequent to these announcements, HISD abandoned the federal forum and sought reconsideration of the validity of WISD's formation before the Texas State Commissioner of Education. Prior to the hearing set by the Commissioner, however, WISD obtained a state court injunction restraining the Commissioner and HISD from proceeding with the hearing or in any way interfering with the implementation of WISD. HISD immediately returned to the Southern District with a supplemental motion for additional permanent injunctive relief, a request for immediate hearing, and an application for a temporary restraining order. It urged that WISD's state court injunction made further abstention inapposite.

After the Southern District denied HISD's application for a temporary restraining order, the state court injunction was affirmed, *Brockette v. Westheimer Independent School District*, Texas Court of Civil Appeals, Third Supreme Judicial District, 546 S.W.2d 832 (1977). The Court of Civil Appeals later modified its opinion to allow HISD to attack the validity of the creation of WISD in an appropriate state court. The appeal from this modified decision is pending before the Texas Supreme Court.

In a memorandum opinion explaining his oral rulings, Judge Noel concluded that (1) WISD's judicial admission and withdrawal of its motion to enjoin the state proceedings had placed the case in a different posture; (2) abstention was appropriate under *Railroad Commission of Texas v. Pullman Company*, 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941); and (3) the 1973 injunction had expired according to its own terms. No formal order was entered to implement these stated conclusions.

After HISD filed yet another application for preliminary and permanent injunctive relief against WISD, the Southern District held an evidentiary hearing which was expressly limited to the issue of the intent and motivation of WISD in submitting its judicial admission.

HISD next moved to intervene in the ongoing proceedings in the United States District Court for the Eastern District of Texas in C. A. 5281, styled *United States v. Texas Educational Agency*, to test whether the changes in boundary lines resulting from the implementation and operation of WISD would adversely affect desegregation in the HISD and adjacent Spring Branch School systems. This matter is now pending.

One week later, HISD filed a notice of appeal from the Southern District's written opinion. The appeal was docketed in this court as No. 77–1069. HISD then sought a stay pending appeal and reinstatement of the 1973 injunction. Its requests were denied for failure to comply with Fed.R. App.P. 8.

In the Southern District the United States filed its second motion for preliminary injunction against WISD and moved for entry of an order implementing the district court's memorandum opinion. The district court responded by entering a memorandum and order (1) staying all motions to permanently enjoin the creation of WISD pending a final determination by appropriate state bodies as to whether WISD was validly created under state law; (2) denying the Houston Teachers Association's petition for leave to intervene; and

(3) concluding that abstention remained appropriate. HISD, Houston Teachers Association, and the United States appeal from this order in No. 77–1367. HISD appealed again in No. 77–1843.

HISD later sought a writ of mandamus ordering Judge Noel to disqualify himself from sitting further in this matter. That petition was docketed as No. 77–2281.

Subsequent to the appeals to this court, WISD filed a cross-complaint in the Southern District in the nature of a Bill of Peace asserting that litigation against it by HISD and other parties is part of a "grand design" by HISD to thwart WISD. Included in the actions complained of by WISD is an action brought under section 5 of the Voting Rights Act to challenge the January 15, 1977 election held by WISD. *Coalition to Preserve Houston and the HISD, et al. v. Interim Board of Trustees of the WISD, et al.*, C.A. No. H–77–92, and *United States v. Board of Trustees of WISD*, C.A. No. H–77–121 (S.D.Tex.).

Abjuring the old saw that "Too many cooks will spoil the broth," the parties and their supporters have one or more related actions pending in the Texas Supreme Court, in two federal forums, and before one or more Texas agencies, in addition to the three appeals presently now being pursued in this court. We have consolidated all appeals in this matter for consideration and disposition. Pursuant to Rule 33 of the Federal Rules of Appellate Procedure, the court directed the attorneys for the parties to appear before the court for a pre-hearing conference to consider simplification of the issues and other matters that might aid in the disposition of the proceedings. This opinion shall serve as the order required by that rule as well as the final disposition of the instant appeals.

The parties stated the issues presently pending before this court to be as follows: HISD: (1) Was dissolution of the 1973 injunction proper? (2) Should WISD's operational status have been enjoined? (3) Was abstention proper? (4) Should

Houston Teachers Association have been granted leave to intervene?

United States: (1) Was abstention proper? (2) What burden of proof should be assigned?

Houston Teachers Association: Was denial of intervention proper?

WISD raised no additional issues.

The court has considered the oral presentations and briefs of the parties as well as the record of the proceedings below.

Construing the 1973 injunction by his predecessor to have expired by its own terms, Judge Noel abstained to permit the Texas courts to resolve the attacks being made on the procedural regularities of WISD's formation. He placed his principal reliance upon *Railroad Commission of Texas v. Pullman Company*, 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941), on the assumption that resolution of the state law question could eliminate the need for a constitutional adjudication by the federal court. We find both the construction of the injunction order and abstention to be improper in this case.

■ Looking first to the interpretation of the 1973 injunction, we note that the entire area comprised within HISD has been subject to the injunctive compulsion of a pending desegregation decree. Before WISD may be allowed to operate as a new school district within such an area, its creation must be tested for effect on the accomplishment of desegregation, in the manner we have outlined below. This has not been done. Thus, to construe the 1973 injunction order as permitting WISD to become operational in 1976 without an adjudication of its effect on HISD would mean either that the HISD was treated as a unitary school system, or that Judge Connally could somehow have known in 1973 that by 1976 the adverse effects which warranted injunctive relief then would be altogether dissipated. Neither premise is proper. HISD has never been adjudicated to have achieved a unitary status in the manner our precedents require. *See United States v. Texas (San Felipe Del Rio Consolidated ISD)*, 509 F.2d 192 (5th Cir. 1975);

*Calhoun v. Cook*, 451 F.2d 583 (5th Cir. 1971). Judged on its face and in context, the proper interpretation of the injunctive decree is that it prohibited the formation of another school district within the confines of HISD for a minimum period of three years and for so long thereafter as might be necessary to enable the new district to show a change in circumstances indicating that its formation will not impede the HISD desegregation process.

■ The abstention doctrines do not embody jurisdictional principles nor are they to be considered as rules of law. Rather, their application is committed to the exercise of a sound discretion based on the facts of each case. *Hill v. City of El Paso, Texas*, 437 F.2d 352 (5th Cir. 1971). The piecemeal results and delays attendant to abstention should not be imposed on the parties to a federal proceeding unless state court action holds realistic promise of avoiding constitutional issues. *Baggett v. Bullitt*, 377 U.S. 360, 84 S.Ct. 1316, 12 L.Ed.2d 377 (1964). Any consideration of abstention, whether under *Pullman* or other doctrines ["(2) to avoid needless conflict with the administration by a state of its own affairs; (3) to leave to the states the resolution of unsettled questions of state law; and (4) to ease the congestion of the federal court docket," C.A. Wright, Law of Federal Courts, 3d ed. 218], must take into primary account its effects on the rights sought to be protected in the court asked to stay its hand.

■ Since the whole of the HISD area is still subject to an ongoing desegregation order, the fundamental issue in this litigation must be framed as assessing the impact of implementing WISD's status as an operational school district on this continuing process. While the validity of WISD's formation under Texas law is an obvious prerequisite to its operation, the legality of WISD's status as a school district does not control the impact of the present controversy on the court's objective of creating a unitary school district in HISD. Just the dispute about validity of a splinter school

district has the potential for interfering with the operation of the parent area from which it seeks to separate. Even now, prior to any resolution of WISD's state law status, the present controversy has had an obviously disquieting effect upon the sensitive community relations in Houston which must be maintained intact if court-ordered relief is to be accomplished. This can be seen in the Teachers Association's efforts to intervene, the concerns of the Mexican-American group, and the action of the citizens group which instituted the three-judge court attack on WISD's recent election, as well as in the resistance of the United States and HISD. To permit this condition to continue during abstention carries such strong possibilities of injuring the very rights sought to be protected in the pending litigation that a court ought not to abstain except for the most compelling reasons. Those reasons simply are not present here.

The issues pending before the Supreme Court of the State of Texas and other state boards and agents concern only the propriety of the procedures under which WISD was formed. The resolution of these issues in state courts might postpone, but could not eliminate the need for dealing with the basic issue of WISD's rights to divide itself from HISD. Even if the present formalities were found to be inadequate, WISD would surely cure the errors and re-present the problem that must be faced. We, therefore, disagree with the district court's assessment that abstention could serve the purpose of avoiding a federal constitutional question.

No question of comity between the court systems exists. Issues pending before state tribunals are principally, if not exclusively, issues of state law which have only the most indirect bearing on the resolution of the equitable issues governing the administration of the desegregation process. It is not the intention of this court to reach or to decide any part of these state law issues, and there will be no reason for the district court to do so on remand. The tribunals and officials of the State of Texas are completely free to proceed with the resolution of questions presented to them or to defer or dismiss those proceedings as they may see fit. For all of these reasons, the application of abstention to this case was an improper exercise of the district court's discretion.

Two decisions by the Supreme Court and two related decisions by this court are central to resolution of the present appeal. *Wright v. Council of City of Emporia*, 407 U.S. 451, 92 S.Ct. 2196, 33 L.Ed.2d 51 (1972); *United States v. Scotland Neck City Board of Education*, 407 U.S. 484, 92 S.Ct. 2214, 33 L.Ed.2d 75 (1972); *Stout v. Jefferson County Board of Education*, 448 F.2d 403 (5th Cir. 1971); and *Stout v. Jefferson County Board of Education*, 466 F.2d 1213 (5th Cir. 1972).

In the *Emporia, Virginia* case, the Supreme Court laid down the test which the district court must apply in determining whether WISD may be permitted to become operational. The Court said that

any attempt by state or local officials to carve out a new school district from an existing district that is in the process of dismantling a dual school system "must be judged according to whether it hinders or furthers the process of school desegregation. If the proposal would impede the dismantling of a dual system, then a district court, in the exercise of its remedial discretion, may enjoin it from being carried out."

*United States v. Scotland Neck City Board of Education*, 407 U.S. at 489, 92 S.Ct. at 2217 (quoting *Wright v. Council of City of Emporia*, 407 U.S. at 460, 92 S.Ct. at 2202). The Court also emphasized that the judgment to be made is primarily the responsibility of the supervising district judge. He must focus on how the creation of the new district would affect the achievement of a desegregated system in the entire area covered by the court's order. The dominant purpose test is not to be applied. In discussing the *Emporia* situation, the Court identified three factors to be weighed: (1) *changes in educational quality*—if upgrading the quality of education for students in the new district would have a substantial

adverse effect on the quality of education for students remaining in the old district, then operation should not be allowed; (2) *changes in student composition*—mere changes in racial ratios are not enough to bar the creations of a new district, but if shifts in ratios would be likely to cause problems such as white flight from the old system or white returns from private schools to the new system, separation should not be allowed; (3) *timing*—if establishment of a new district might have preceded court action, but instead has come about as a reaction to the operation of the desegregation order, it may carry the same negative message condemned in *Brown I.* The Supreme Court affirmed the district court's refusal to allow implementation of the Emporia District which was based upon the district court's findings that the separation would result in a loss to the remaining county schools of leadership and financing and possibly teachers, all of which would diminish the chances for successful transition to a unitary school system.

In the *Scotland Neck, North Carolina* case, the Supreme Court held that the source of power which creates a splinter school district is an immaterial matter. The same test is to be applied whether statewide legislative action or local government ordains the new district. It again emphasized that *effect*, not purpose, was the key. Because the creation of a school district in Scotland Neck would establish a 57% white system within the confines of a presently 77% black system, it affirmed the district court's refusal to allow the new system to be created. While pupil percentages alone are not controlling, where the disparity between old and new districts is substantial, the effect on achievement of court-ordered desegregation becomes axiomatic.

This circuit has also dealt with the creation of new districts within areas subject to continuing desegregation orders. Indeed, our language in the second *Stout* decision, 466 F.2d 1213, 1214, is the source of WISD's stipulation in the present appeal. In the course of that opinion, we said:

The district court on remand correctly interpreted our prior order and directed the splinter districts to accept a proper role in the desegregation of the county system.

The generality, "accept a proper role in . . . desegregation . . .," only epitomized the action taken by the district court in that case. It was not intended to define a new district's responsibilities. We expressly noted that the district court had in fact applied the substance of the *Emporia* and *Scotland Neck* cases and had looked at whether recognition of the new district would thwart implementation of a unitary system in the county as a whole. See n.2 at 1215. We further noted that the approach taken by the district court looked at the entirety of the system subject to the court's order to determine what needed to be done to assure the achievement of a unitary system and then determined whether the creation of the separate system would interfere with the process of desegregation. *Id.*

◼ The right of WISD to implement and operate a new and separate school district partly within the geographic confines of HISD has never been tested by the criteria established in these precedents. We remand the case so that the district court can make the required assay.

WISD must, at the outset, establish what its operations will be. It cannot meet this requirement by simply reasserting the admission previously filed; rather, WISD must express its precise policy positions on each significant facet of school district operation. For example, it should state how it plans to work with HISD regarding interdistrict pupil assignments, including transportation; curriculum composition and control; teacher employment, discharge, assignment and transfer; financing and taxation; school building construction, utilization and closing procedures; special district-wide efforts such as the magnet school program; administration; and any other areas of public school operations or support which the district court may specify as pertinent to the accomplishment of its underlying desegregation order. *See Singleton v.*

*Jackson Municipal Separate School District,* 419 F.2d 1211, 1217–1219 (5th Cir. 1970). Even after this definitive statement has been made, the burden remains on WISD to establish that its implementation and operation will meet the tests outlined for permitting newly created districts to come into being for parts of districts already under an ongoing court desegregation order.

■ We construe both the basic HISD desegregation orders and the court's particular 1973 injunction order to continue to bar the implementation and operation of WISD until the district court has declared that the tests required by *Emporia, Scotland Neck,* and *Stout* have been met.

■ The same issue presented here appears to have been raised by HISD's intervention in *United States v. Texas Educational Agency in the Eastern District of Texas,* with one additional facet—that court will have to determine the effect of WISD's operation on the Spring Branch School System as well as upon HISD. However, under WISD's proposal, only a small portion of its territory would come from the Spring Branch area. It would be both unseemly and a waste of judicial resources for two United States District Courts to be engaged in the determination of the same issue between the same parties. The matter has been extensively developed in the court in the Southern District. The lands and schools principally composing WISD are presently embraced within the geographic boundaries of HISD. When the action presently pending before the Eastern District was before this court, we required the inclusion in that court's basic order of the following proviso: "Nothing herein shall be deemed to effect the jurisdiction of any other district court with respect to any presently pending or future school desegregation suits." *United States v. Texas,* 447 F.2d 441, 442 (5th Cir. 1971). We therefore direct the Southern District to proceed to resolve the issues related to the implementation and operation of WISD.

■ In view of the extensive changes that we have made in the posture of this case by our opinion today, we deem it appropriate to vacate the previous denial of intervention to Houston Teachers Association and to direct the court below to reconsider that motion. We intimate no view as to what the outcome of that reconsideration should be.

■ The Chief Circuit Judge's order convening the three-judge court to consider Civil Actions H–77–92 and H–77–121 expressly stated that the issues committed to that court were to be limited to the Voting Rights Act challenge to the January 1977 election. Specifically, it does not cover any other cause or matter in the extensive proceedings involving the Houston Independent School District and the Interim Board of Trustees of the Westheimer Independent School District, et al., now pending in the Southern District of Texas, or appeals now pending in the Court of Appeals as docketed under numbers 77–1069, 77–1367, and 77–1843. Thus, there is no conflict between that proceeding and the present action.

Judge Cowan has entered on duty and portions of Judge Noel's docket, including the instant litigation, have been reassigned to Judge Cowan. On August 5, 1977, Judge Cowan entered a memorandum order which provided:

> if the Fifth Circuit Court of Appeals believes it appropriate for this Court to reconsider at this time the prior rulings of the Court and conduct a prompt factual hearing, the undersigned expresses his willingness and inclination to follow such a course, and to reschedule or cancel any other settings which would interfere with such a hearing  .  .  . .

The order of abstention and the order denying intervention to Houston Teachers Association are vacated. The cause is remanded to the district court with directions to proceed to reconsider this matter in accordance with its above expression and in accordance with this opinion.

Since a new judge has been assigned to this cause, the petition in No. 77–2281 is moot.

Nos. 77–1069, 77–1367, and 77–1843 VACATED AND REMANDED.

No. 77–2281 DISMISSED.