POLICE OFFICERS' GUILD, NATION-
AL UNION OF POLICE OFFICERS,
AFL–CIO, et al., Plaintiffs,

v.

Walter E. WASHINGTON, as Mayor
Commissioner of Washington, D. C.,
Donald H. Weinberg, individually and
as Director of Personnel of Washington,
D. C., Government of the District of
Columbia and the American Arbitra-
tion Association, Defendants.

Civ. A. No. 1670–73.

United States District Court,
District of Columbia.

Dec. 21, 1973.

Elliot Bredhoff, George H. Cohen, Darryl J. Anderson, Bredhoff, Cushman, Gottesman & Cohen, Washington, D. C., for plaintiffs.

Mellie H. Nelson, Asst. Corp. Coun., Washington, D. C., for defendants Washington and Weinberg.

Gordon P. Ramsey, Washington, D. C., for intervenor, Local 442, International Brotherhood of Police Officers, a Divi-sion of the National Association of Government Employees.

Before FAHY, Circuit Judge, and FLANNERY and BRYANT, District Judges.

## MEMORANDUM OPINION

FLANNERY, District Judge.

This action was instituted by the Police Officers' Guild, National Union of Police Officers, AFL–CIO (POG–NUPO) on its own behalf and on behalf of its members and by certain individual police officers employed by the Metropolitan Police Department of the District of Columbia and officials of POG–NUPO. Local 442, the International Brotherhood of Police Officers (IBPO) was granted leave to intervene as plaintiff and similarly brings this action on its own behalf and on behalf of its members.

Plaintiffs seek a judgment pursuant to 28 U.S.C. §§ 2201, 2202 declaring the first paragraph of Title 4, Section 125 of the District of Columbia Code unconstitutional because it prohibits police officers, under pain of immediate discharge, from associating freely and from becoming members of or affiliating with any organization which "holds, claims or uses" the right to strike.[1] In addition, plaintiffs seek to enjoin the defendants permanently from acting to enforce Section 4–125 or interfere with the plaintiffs' right to participate fully in a labor representation election to be held in the Metropolitan Police Department. The governmental defendants are officials of the District of Columbia responsible for the enforcement of Section 4–125 and ultimately responsible for administration of personnel matters within the Metropolitan Police Department. The jurisdiction of this court is asserted under 28 U.S.C. § 1331.

Upon application to the district judge to whom the case was originally brought for hearing and after briefing and oral argument by both sides, a temporary re-

1. D.C.Code § 4–125 (1973).

straining order was issued staying the scheduled representation election. Subsequently, the plaintiffs' application for a three-judge court was granted and the temporary restraining order extended pursuant to 28 U.S.C. § 2284(3) until this case could be heard and determined by the three-judge panel. The plaintiffs then moved for a preliminary injunction and the matter is now before the court on the defendants' motion to dismiss for failure to state a claim. Fed.R.Civ.P. 12(b)(6). A hearing before this three-judge court was held on October 15, 1973. The court, having previously granted the plaintiffs' motion for consolidation of the trial on the merits with the hearing on their application for preliminary injunction, now deems the matter submitted.[2]

For the reasons hereinafter stated, the court believes that the first paragraph of D.C.Code Section 4–125 cannot be read narrowly to save it from a constitutional attack and concludes that it unlawfully infringes upon rights guaranteed the plaintiffs by the First Amendment to the Constitution of the United States.

## BACKGROUND

### The Parties

POG–NUPO is a labor organization with its principal place of business in Washington, D. C. Its membership consists of approximately 1,000 police privates and sergeants employed by the Department. Originally chartered as the Police Officers' Guild, an independent and unaffiliated organization, the members of POG on July 30, 1973 voted to affiliate themselves with the National Union of Police Officers, AFL–CIO (NUPO). NUPO is, in turn, an independent division of the Service Employees International Union, AFL–CIO (SEIU). NUPO was initially formed in 1972 and presently has 58 chartered locals with several thousand members. It is comprised exclusively of police officers, run by police officers, for the benefit of police officers. Thus, although NUPO is a division of SEIU it is governed by the provisions of its own constitution and by-laws which limit membership to full-time police officers. The SEIU, apart from its NUPO division, is comprised primarily of members who are employed in private sector industries. Insofar as the SEIU represents employees in the private sector, it asserts and, in fact, exercises the right to strike in support of its bargaining demands.

The agreement of affiliation between NUPO and SEIU expressly provides that NUPO shall be a separate and distinct police division of SEIU. NUPO is opposed to strikes by police officers; its constitution and by-laws specifically preclude it from striking.[3] The SEIU in October, 1972 approved NUPO's constitution, including the express prohibition against strikes. POG's articles of incorporation specifically prohibit its members from acting inconsistently with law. It appears uncontradicted from the record that POG has adopted without reservation the policies and charters which govern NUPO.

Local 442, International Brotherhood of Police Officers (IBPO), Intervenor, is a labor organization with its principal place of business in Washington, D. C. and with membership consisting of police officers employed by the Department. IBPO is an affiliate of a parent labor organization, the National Association of Government Employees (NAGE). NAGE, an independent government em-

2. The parties have indicated to the court orally and in writing their belief that this case is presently ripe for a final determination on the merits. Accordingly, the court's resolution of the motion to dismiss will be dispositive of the case.

3. Article II, Section 3 of NUPO's constitution and by-laws provides as follows:

"*Section 3: Strikes*
"Recognizing that the orderly functioning of society is dependent upon consistent and stable law enforcement, NUPO is opposed to strikes by police officers and will not engage in such strikes."

ployee union, has more than 800 locals across the United States and represents more than 200,000 federal, state and local government employees. The IBPO Division of NAGE has more than 136 local unions representing police officers employed by approximately 136 police departments.

According to allegations in its complaint, it is the policy of IBPO to observe all governmental rules and regulations. NAGE and IBPO specifically disavow the right of police officers to engage in economic strikes. NAGE's constitution, however, does not contain a no-strike clause. In addition, NAGE is the certified collective bargaining representative of certain Pennsylvania local governmental employees who lawfully may engage in economic strikes in support of their bargaining demands. As to these employees, NAGE holds, claims and may use economic strikes in support of such local unions' collective bargaining efforts. Indeed, NAGE has publicly called for the removal of all statutes prohibiting federal, state and local government employees from engaging in economic strikes.

*Facts*

The facts leading to this action are not in dispute. Pursuant to Chapter 25A of the District of Columbia Personnel Manual [4] and to a Decision and Order of the Board of Labor Relations of the District of Columbia issued on July 23, 1973,[5] a representation election was scheduled to be held among certain offi-

cers of the Metropolitan Police Department. The representation proceedings were initiated as a result of a request for exclusive recognition by the Policemen's Association of the District of Columbia and a similar request for recognition by IBPO. Subsequently, on February 23, 1973 and February 26, 1973, the Police Officers' Guild (then an independent, unaffiliated organization) duly intervened in the proceedings. At present, the Department does not recognize any labor organization as the exclusive bargaining representative of any of its officers.

Throughout the proceedings the Board considered POG and the two other competing organizations to be labor organizations as defined in Chapter 25A, Section 3(n) of the Manual. All three unions participated fully in the proceedings through legal counsel. Each entered documentary evidence; gave testimony before the Board; presented oral argument; and submitted written briefs to the Board. The Board's Order of July 23, 1973 established the appropriate unit [6] of employees within which a representation election would be conducted for the purpose of determining which labor organization would be its exclusive bargaining representative and provided the employees of this unit a choice between the Policemen's Association; Local 442, International Brotherhood of Police Officers; the Police Officers' Guild; and no labor organization.[7]

On July 30, 1973 the Police Officers' Guild became affiliated with the Nation-

---

4. Chapter 25A of the District of Columbia Personnel Manual sets forth the policies, procedures, and regulations governing the relationship between the District of Columbia Government and labor organizations representing its employees. On February 5, 1973, these provisions were made applicable to the Metropolitan Police Department by Commissioner's Order No. 73–32.

5. In the Matter of Metropolitan Police Department et al., Nos. 3R004–05 (Bd. of Labor Relations, D.C., July 23, 1973).

6. The Board concluded that the following unit was appropriate for the purpose of exclusive recognition under Chapter 25A:

All police privates, including investigators and desk sergeants, detective sergeants and police sergeants employed in the uniformed and plainclothes forces of the Metropolitan Police Department, unless assigned to the Internal Affairs Division, excluding management executives, confidential employees, supervisors, and employees engaged in personnel work in other than a purely clerical capacity.

7. In the matter of Metropolitan Police Department, et al., note 5, at 20.

al Union of Police Officers, AFL–CIO. Defendant Donald H. Weinberg, Director of Personnel for the District of Columbia, immediately notified POG–NUPO that, in his opinion, under the provisions of D.C.Code Section 4–125 POG's affiliation with NUPO, AFL–CIO placed all its members in jeopardy of loss of employment because NUPO was a labor organization indirectly affiliated with the AFL–CIO whose other affiliations engage in strikes.[8] Thereafter, solely on the basis of the POG–NUPO affiliation, Mr. Weinberg issued his decision to strike POG–NUPO from the

ballot and exclude it from further participation in the representation proceedings.[9] On August 27, 1973 the plaintiffs filed this action.

## DISCUSSION

### Jurisdiction in This Court

Clearly all the parties herein have standing to bring this action.[10] When an action against an employee for arguably legitimate First Amendment activity is actually begun or clearly imminent, a justiciable controversy is presented to the court.[11]

8. Weinberg's letter dated August 3, 1973 reads in part:
"The recent affiliation of the Police Officers' Guild with the National Union of Police Officers, AFL–CIO has been brought to my attention.
"This affiliation presents a very difficult situation inasmuch as it could possbily jeopardize the employment status of those members of the Metropolitan Police who are also members of the Police Officers' Guild. It is our opinion that such affiliation places these members in violation of Title 4, Section 125, D.C.Code which reads in part as follows:
" '§ 4–125. Affiliation with organizations advocating strikes, prohibited—Penalties—Conspiracy to interfere with operation of police force—Right of resignation restricted.
" 'No member of the Metropolitan Police of the District of Columbia shall be or become a member of any organization, or of an organization affiliated with another organization, which itself, or any subordinate, component, or affiliated organization of which holds, claims, or uses the strike to enforce its demands. Upon sufficient proof to the Commissioner of the District of Columbia that any member of the Metropolitan Police of the District of Columbia has violated the provisions of this section, it shall be the duty of the Commissioner of the District of Columbia to immediately discharge such member from the service. . . .'
"Because of the gravity of this matter, your immediate attention should be directed to a prompt resolution."

9. Mr. Weinberg by letter to plaintiff Robert Ranger, President of POG–NUPO, dated August 24, 1973 stated:
"This letter will confirm my decision at the meeting on August 21 to exclude the Police Officers' Guild from participation in

the election to select an exclusive bargaining agent for certain members of the Metropolitan Police Department.
"The decision was based on a conclusion expressed by the Corporation Counsel that membership in the Police Officers' Guild violates section 4–125 of the D.C.Code.
"Because the statute forbids membership in the Guild as presently constituted, the Guild cannot act as exclusive bargaining representative for police officers. Therefore, no legitimate purpose would be served by including your organization on the ballot in the upcoming election."

10. Nat'l Ass'n of Letter Carriers v. Blount, 305 F.Supp. 546, 548 (D.D.C.1969) (three-judge court). POG's decision to affiliate led directly to its disqualification through application and enforcement of § 4–125. Note 9, *supra*, and accompanying text. The record further indicates that the POG–NUPO affiliation has placed the employment status of all of POG–NUPO'S members in immediate and continuing jeopardy. In addition, the defendants' decision to remove POG–NUPO from the ballot poses serious questions for the plaintiff-intervenor, IBPO, whose parent holds and claims the right to engage in economic strikes where such action is not expressly prohibited. Page 546, *supra*. In view of the defendants' interpretation of § 4–125, IBPO could presently be removed from the ballot, its recognition as a collective bargaining representative be revoked, or members of IBPO employed by the Department be discharged. Therefore, the court concludes that both organizational plaintiffs herein may also properly join in this action.

11. *Id.* at 549. United States Civ. Service Comm. v. Nat'l Ass'n of Letter Carriers, 413 U.S. 548, 93 S.Ct. 2880, 2885, 37 L.Ed.2d 796 (1973); United Public Workers v. Mitchell, 330 U.S. 75, 89–90, 67 S.Ct. 556, 91 L.Ed. 754 (1947). *See* Dombrowski v. Pfister, 380 U.S. 479, 486–487, 85 S.Ct. 1116, 14

At the outset, defendants deny that a federal question under 28 U.S.C. § 1331 is raised. Defendants urge it was the intent of Congress in enacting The District of Columbia Court Reform and Criminal Procedure Act of 1970, Pub.L. No. 91–358, 84 Stat. 473 [hereinafter, the D.C. Court Reform Act] that disputes regarding laws of local application, such as Section 4–125, be resolved exclusively by the newly-reorganized local judicial system. This contention is based on Section 172(c) of the Act, 84 Stat. 590, which Congress incorporated into Title 28 of the United States Code and which provides that for purposes of Section 1331 "references to laws of the United States or Acts of Congress do not include laws applicable to the District of Columbia," 28 U.S.C. § 1363 (1970).

■ The defendants' contention must be rejected. It is plain that in the wake of the District of Columbia Court Reform Act this court retains full federal question subject matter jurisdiction under 28 U.S.C. § 1331. As a result of the Act, the United States District Court for the District of Columbia has jurisdiction similar to other United States district courts. H.R.Rep.No.91–907, 91st Cong., 2d Sess. 34; Senate Comm. on the Dist. of Col., Statement of the Managers on the Part of the Senate Regarding the Conference Action Upon S. 2601, 91st Cong., 2d Sess. 4 (Comm. Print 1970).[12] The claim that Section 4–125 violates the plaintiffs' rights of free speech and association clearly "arises under the Constitution" within the meaning of Section 1331. This court has jurisdiction over the subject matter of the complaints notwithstanding plaintiffs' challenge to a "local" statute. *See,* e. g., Bivens v. Six Un-

known Federal Narcotics Agents, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971); Powell v. McCormack, 395 U.S. 486, 515–516, 89 S.Ct. 1944, 23 L.Ed.2d 491 (1969); Bell v. Hood, 327 U.S. 678, 66 S.Ct. 773, 90 L.Ed. 939 (1946); King County v. Seattle, 263 U.S. 361, 44 S.Ct. 127, 68 L.Ed. 339 (1923); Sullivan v. Murphy, 478 F.2d 938 (D.C.Cir. 1973); Creel v. City of Atlanta, 399 F.2d 777 (5th Cir. 1968).

## *Whether a Three-Judge Court is Required*

■■ Defendants next argue this is not a proper case for convening a three-judge court. 28 U.S.C. § 2282, and its complement, § 2281 require three judges to hear injunctive suits attacking federal and state legislation, respectively, for repugnance to the Constitution of the United States. Kennedy v. Mendoza-Martinez, 372 U.S. 144, 152–155, 83 S. Ct. 554, 9 L.Ed.2d 644 (1963); Bailey v. Patterson, 369 U.S. 31, 33, 82 S.Ct. 549, 7 L.Ed.2d 512 (1962); Idlewild Bon Voyage Liquor Corp. v. Epstein, 370 U. S. 713, 715, 82 S.Ct. 1294, 8 L.Ed.2d 794 (1962); Phillips v. United States, 312 U.S. 246, 251, 61 S.Ct. 480, 85 L.Ed. 800 (1941). A single United States district judge has no jurisdiction to proceed to the merits of the plaintiffs' claim if formation of this special tribunal is required. Kennedy v. Mendoza-Martinez, *supra,* 372 U.S. at 153, 83 S.Ct. 554; Woodward v. Rogers, 344 F.Supp. 974, 977 (D.D.C.1972), aff'd mem., 486 F.2d 1317 (D.C.Cir.1973). When an application for a statutory three-judge court is addressed to a district court, the court is limited to the following determinations before it can request the Chief Judge of the Circuit to convene the panel: (1) whether the complaint formally alleges a

---

L.Ed.2d 22 (1965); N.A.A.C.P. v. Button, 371 U.S. 415, 433, 83 S.Ct. 328, 9 L.Ed.2d 405 (1963).

12. Congress intended to confine the work of the District of Columbia's Article III courts, that is, the United States District Court for the District of Columbia and the United

States Court of Appeals for the District of Columbia "to that which, for the most part, they were designed to do, namely, the trial of cases arising under the Constitution and the nationally applicable laws of Congress." Palmore v. United States, 411 U.S. 389, 93 S.Ct. 1670, 1682, 36 L.Ed.2d 342 (1973).

basis for equitable relief; (2) whether the constitutional question presented is substantial; and (3) whether the case presented otherwise comes within the requirements of the applicable three-judge statute. Idlewild Bon Voyage Liquor Corp. v. Epstein, *supra,* 370 U.S. at 715, 82 S.Ct. 1294.

First, plaintiffs' complaints formally allege a basis for and specifically request preliminary and permanent injunctive relief.[13] Moreover, it is clear the parties at all times have regarded this action as one in which injunctive relief is material to the disposition of the case. *See* Kennedy v. Mendoza-Martinez, *supra,* 372 U.S. at 154, 83 S.Ct. 554; Flemming v. Nestor, 363 U.S. 603, 607, 80 S.Ct. 1367, 4 L.Ed.2d 1435 (1960); Jeannette Rankin Brigade v. Chief of Capitol Police, 137 U.S.App.D. C. 155, 159, 421 F.2d 1090, 1094 (1969).

Second, a substantial constitutional question is raised. On its face Section 4–125 forecloses police officers from membership in any labor organization which "holds [or] claims" the right to strike. Whenever the state's power to regulate activities touches our most precious freedoms—such as the freedoms of speech and association at issue here— courts must carefully examine any question relating to the government's exercise of such power to determine whether the state regulation unduly infringes protected freedoms. *See, e. g.,* Healy v. James, 408 U.S. 169, 92 S.Ct. 2338, 33 L.Ed.2d 266 (1972); Keyishian v. Bd. of Regents, 385 U.S. 589, 87 S.Ct. 675, 17 L.Ed.2d 629 (1967); United States v. Robel, 389 U.S. 258, 88 S.Ct. 419, 19 L. Ed.2d 508 (1967); Aptheker v. Secretary of State, 378 U.S. 500, 84 S.Ct. 1659, 12 L.Ed.2d 992 (1964); N. A. A.

C. P. v. Alabama ex rel. Flowers, 377 U. S. 288, 84 S.Ct. 1302, 12 L.Ed.2d 325 (1964); N. A. A. C. P. v. Button, 371 U.S. 415, 83 S.Ct. 328, 9 L.Ed.2d 405 (1963); Shelton v. Tucker, 364 U.S. 479, 81 S.Ct. 247, 5 L.Ed.2d 231 (1960). A constitutional claim is substantial unless it is either "obviously without merit or . . . its unsoundness so clearly results from previous decisions . . . as to foreclose the subject." Bailey v. Paterson, *supra*; California Water Service Co. v. Redding, 304 U.S. 252, 255, 58 S.Ct. 865, 867, 82 L.Ed. 1323 (1938); Ex parte Poresky, 290 U.S. 30, 54 S.Ct. 3, 78 L.Ed. 152 (1933). Clearly, then, the plaintiffs here raise a substantial constitutional claim. *See* Nat'l Ass'n of Letter Carriers v. Blount, *supra*; Melton v. City of Atlanta, 324 F.Supp. 315 (N.D.Ga.1971) (three-judge court); Atkins v. City of Charlotte, 296 F.Supp. 1068 (W.D.N.C.1969) (three-judge court).

Finally, the defendants urge Section 4–125 is not an "Act of Congress" within the meaning of 28 U.S.C. § 2282 because Section 4–125 is limited in operation to matters which affect only the District of Columbia. This issue has arisen before in this district. And, as before, the court resolves the issue in favor of applying § 2282.[14] Section 2282 applies to "any Act of Congress." Thus, under § 2282, three-judge courts may hear cases involving statutes enacted by Congress but pertaining to the District of Columbia and having only local effect. In Hobson v. Hansen, 265 F. Supp. 902 (D.D.C. 1967), a three-judge court on constitutional grounds upheld a statute directing this court to appoint members of the local school board. Again, in Harrell v. Tobriner, 279 F. Supp. 22 (D.D.C. 1967), *affirmed sub*

---

13. Plaintiffs request declaratory and accompanying injunctive relief on the grounds that § 4–125 is unconstitutional. Plaintiff POG– NUPO's Prayer for Relief, ¶¶ (a)–(h); Plaintiff-Intervenor IBPO's Prayer for Relief, ¶¶ (a)–(g). Under these circumstances a three-judge court may properly be convened. Melton v. City of Atlanta, *infra;* Atkins v. City of Charlotte, *infra.*

14. Neither party urges upon the court the applicability of 28 U.S.C. § 2881 in convening a three-judge court to consider the constitutionality of § 4–125. Since the court has determined that § 2282 applies in this case, it need not reach the question.

*nom.*, Shapiro v. Thompson, 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969) a three-judge panel held the District of Columbia's public assistance residency requirement was a denial of equal protection. Indeed, the Supreme Court has expressly refused to make an exception to § 2282 for Acts of Congress pertaining only to the District. Shapiro v. Thompson, *supra*, 394 U.S. at 625, n. 4, 89 S.Ct. 1322; *see* Jeannette Rankin Brigade v. Chief of Police, *supra*, 137 U.S.App.D.C. at 158, n. 3, 421 F.2d at 1093.

But, here again, the defendants suggest the D.C. Court Reform Act dictates a different result. This Act seeks to create a more efficient system of administering justice within the District. Thus, it tends to crystallize the impression that a traditional federal-state relationship between the District and the Federal Government has been established. However, the District of Columbia remains a constitutionally unique jurisdiction. Palmore v. United States, *supra*, 411 U.S. 389, 93 S.Ct. 1675, 36 L. Ed.2d 342; *cf.* District of Columbia v. Carter, 409 U.S. 418, 93 S.Ct. 602, 34 L. Ed.2d 613 (1973). The court sees no relationship between implementation of needed change in the local judicial system and continued application of § 2282 to matters properly raised in this United States District Court.

A single federal judge may not disrupt totally the operation of an entire regulatory scheme. "The crux of the business is procedural protection against an improvident state-wide doom by a federal court of a state's legislative policy." Phillips v. United States, *supra*, 312 U.S. at 251, 61 S.Ct. at 483; *see* Kennedy v. Mendoza-Martinez, *supra* 372 U.S. at 154–155, 83 S.Ct. 554. The complaints herein present a single challenge to the validity of D.C.Code Section 4–

125. On constitutional grounds, plaintiffs attack the statute as void on its face and request a permanent injunction against any attempt to enforce it. Granting the relief requested will profoundly affect the scheme upon which the District of Columbia's efforts, and therefore those of Congress, to regulate employee unions within the Metropolitan Police Department are based.[15] Consequently, all policy considerations behind the three-judge requirement are satisfied by this case. Therefore, it is the court's opinion that 28 U.S.C. § 2282 has been properly invoked.

## THE CONSTITUTIONAL QUESTION

On the merits, this case presents one central question: Is D.C.Code Section 4–125, paragraph 1, so overbroad as to unconstitutionally impinge plaintiffs' right of freedom of association protected under the First Amendment.

The challenged provision of Section 4–125 reads as follows:

" '§ 4–125. Affiliation with organizations advocating strikes, prohibited —Penalties—Conspiracy to interfere with operation of police force—Right of resignation restricted.

" 'No member of the Metropolitan Police of the District of Columbia shall be or become a member of any organization, or of an organization affiliated with another organization, which itself, or any subordinate, component, or affiliated organization of which holds, claims, or uses the strike to enforce its demands. Upon sufficient proof to the Commissioners of the District of Columbia that any member of the Metropolitan Police of the District of Columbia has violated the provisions of this section, it shall be the duty of the commissioners of the District of Columbia to immediately discharge such member from the service.' "

---

15. § 4–125 appears to have become the focal point upon which the District seeks to regulate police officer unions. Police officers employed by the Department have only recently been given the right to organize and bargain collectively. *See,* n. 4–7 and accompanying text. By invoking the statute against POG–NUPO before the first representation election could be held within the Department, the District makes its intention regarding subsequent use of § 4–125 clear.

The theory that public employment may be subjected to any conditions, regardless of how unreasonable, has been uniformly rejected. Keyishian v. Bd. of Regents, *supra*, 385 U.S. at 605–606, 87 S.Ct. 675, 17 L.Ed.2d 629; Illinois State Employees Union, Council 34 v. Lewis, 473 F.2d 561, 568 (7th Cir. 1972); Garrity v. New Jersey, 385 U.S. 493, 500, 87 S.Ct. 616, 17 L.Ed.2d 562 (1967); Muller v. Conlisk, 429 F.2d 901, 904 (7th Cir. 1970); Bruns v. Pomerleau, 319 F.Supp. 58, 63–64 (D.Md. 1970); Brukiewa v. Police Comm'r, 257 Md. 36, 263 A.2d 210 (1970). Policemen, "like teachers and lawyers, are not relegated to a watered-down version of constitutional rights. There are rights of constitutional stature whose exercise a state may not condition by the exaction of a price. . . . " Garrity v. New Jersey, *supra*, 385 U.S. at 500, 87 S.Ct. at 620 (1967). Among the rights so protected are the right of individuals to associate to further their personal beliefs [16] and, more specifically, with respect to the rights asserted by the complainants in this action, the right of public employees to organize collectively and to select representatives for purposes of engaging in collective bargaining. United Federation of Postal Clerks v. Blount, 325 F.Supp. 879, 883 (D.D.C. 1971); Thomas v. Collins, 323 U.S. 516, 532–534, 65 S.Ct. 315, 89 L.Ed. 430 (1945); NLRB v. Jones & Laughlin, 301 U.S. 1, 33, 57 S.Ct. 615, 81 L.Ed. 893 (1937); *see* Hague v. CIO, 307 U.S. 496, 59 S.Ct. 954, 83 L.Ed. 1423 (1939).

■ The unique and special nature of a policeman's obligation to serve the public justifies state control and prohibition of some activities in which he would otherwise be free to engage. However, it is axiomatic that a governmental purpose to control conduct constitutionally subject to state regulation may not be achieved by means which sweep unnecessarily broadly.

■■ The essence of the concept of overbreadth is that the challenged statute includes within its prohibitions both legal and illegal activity. Nat'l Ass'n of Letter Carriers v. United States Civil Service Comm'n, 346 F.Supp. 578, 589 (D.D.C.1972, three-judge court) (MacKinnon, J., dissenting), reversed on other grounds, 413 U.S. 548, 93 S.Ct. 2880, 37 L.Ed.2d 796 (1973). Section 4–125 forecloses all police officers from becoming members of any labor organization which "*holds, claims* or uses the strike . . . . " In Nat'l Ass'n of Letter Carriers v. Blount, *supra*, a three-judge district court for the District of Columbia struck down a statute with an essentially identical proscription. The statute stated in pertinent part:

> "An individual may not accept or hold a position in the Government of the United States or the Government of the District of Columbia if he—
>
> \* \* \* \* \* \*
>
> (4) is a member of an organization of employees . . . that he knows *asserts* the right to strike against the Government of the United States or the Government of the District of Columbia."

5 U.S.C. § 7311(4). Judge Gesell, writing for a unanimous court, reasoned the statute on its face ran expressly contra to the time-honored right to engage in "advocacy or reasoned argument," an activity which lies at the heart of free speech and association. 305 F.Supp. 550. The *Blount* court's analysis is equally dispositive here. Section 4–125 bans membership by police officers of the Metropolitan Police Department in labor unions which not only actually "use" or engage in strikes but in those which "hold" or "claim" the right to strike. Thus, Section 4–125 prohibits

---

16. Healy v. James, *supra*, 408 U.S. at 181, 92 S.Ct. 2338, 33 L.Ed.2d 266; N.A.A.C.P. v. Button, *supra*, 371 U.S. at 430, 83 S.Ct. 328, 9 L.Ed.2d 405; Aptheker v. Secretary of State, *supra*. In addition, the right to associate applies where the beliefs sought to be advanced relate to economic matters. N. A.A.C.P. v. Alabama ex rel. Patterson, 357 U.S. 449, 460–461, 78 S.Ct. 1163, 2 L.Ed.2d 1488 (1958).

District of Columbia police officers from engaging in fundamentally protected activity—that is, from advocating, asserting or simply entertaining thoughts of achieving the right to strike against the District of Columbia Government. The court, like the court in *Blount*, finds in the record before it no state interest so compelling as to justify such a significant infringement of rights guaranteed a public employee by the First Amendment.

Indeed, Section 4–125 contains a much more expansive intrusion on free speech. Unlike the statute in *Blount* which was concerned with public employees asserting the right to strike against the Government, Section 4–125 can be read to foreclose membership in a union which advocates the right to strike against *any* employer. Clearly, this sweeping restriction on a policeman's right to join others in advocating protected ideas and conduct [17] cannot stand.

The court's analysis of Section 4–125 does not end with this determination, however. Section 4–125 prevents membership in, or *affiliation with*, any union which asserts the right to strike. In addition, Section 4–125 would subject an officer to immediate discharge in circumstances where he joined a labor union affiliated with another organization which did not at the time of joining "hold, claim or use the strike" but which subsequently participated in a strike. In short, Section 4–125 mandates severe sanctions against a police officer simply because of his membership in some but not all labor organizations.

Apparently, Section 4–125 presumes that membership in certain labor unions whose affiliated organizations use the strike creates a danger to the District of Columbia which outweighs a Department employee's right to join a union of his own choice. As a three-judge district court recently noted in a similar context relating to the right of municipal fire department employees to join organizations affiliated with national or international labor unions, the state may properly be concerned not with whether District policemen meet under the auspices of any particular organization but only with "whether their proposed concerted action, if any, endangers valid state interests." Atkins v. City of Charlotte, 296 F.Supp. 1068, 1075 (W. D.N.C.1969). Defendants argue the restrictions against affiliations imposed by Congress in Section 4–125 are necessary to insure a smoothly running, fair and impartial police force. Moreover, guarantees by POG–NUPO, IBPO or any other labor union of its unequivocal opposition to strikes by police officers [18] will not effect such impartiality, it is contended. For example, defendants suggest the possibility a policeman's union sympathies will interfere with his duties when he is called upon the scene of a labor dispute involving any of his union's affiliates. In this situation, it is urged, any after-the-fact sanctions that may be imposed for the officer's improper conduct would be ineffective.

In Melton v. City of Atlanta, *supra*, legislation directed to police officers and enacted to curb this same speculative "abuse" was declared unconstitutional by a three-judge district court. While the *Melton* statute absolutely prohibited police officers from joining *any* labor union, Section 4–125 is not so limited or more narrowly drawn as to convince this court a different conclusion for the District of Columbia police department should be reached. No showing or even allegation has been made that any police officer member of POG–NUPO or of IBPO failed to satisfactorily perform his public duties relating to a dispute involving a labor union. Thus, the prohibition set forth in Section 4–125 "is supported only by a tenuous relationship between the bare fact of organizational membership [in POG–NUPO or IBPO]

---

17. Section 7 of the National Labor Relations Act, 29 U.S.C. § 157 guarantees individuals employed by private employers the right to strike.

18. See note, 3, *supra*, and accompanying text.

and the activity which Congress sought to proscribe [dereliction of duty by police officers in the context of a labor dispute]", Aptheker v. United States, *supra,* 378 U.S. at 514, 84 S.Ct. at 1668 and, consequently, cannot be upheld.

 It is clear the defendants have a legitimate interest in preventing strikes by public employees, and most especially by the police. But, the appropriate legislative solution is not to destroy freedom of association. Rather, it is to determine whether proposed concerted action actually endangers a valid state interest and, if so, to fashion *precise* legislation to protect the public. Atkins v. City of Charlotte, *supra,* 296 F.Supp. at 1075–1077. To prevent police strikes the public interest is protected by declaring such strikes illegal.[19] In fact, this is the basic statutory approach which has been utilized with respect to firemen employed by the District of Columbia Government.[20]

The merit of any such precise regulation is that it is limited to proscribing unlawful *conduct* rather than intruding upon speech, beliefs, advocacy or the right to associate freely with individuals and to join groups of one's choosing. As such, it draws a line "between permissible speech and impermissible conduct [which] tracks the constitutional requirements . . ." Healy v. James, *supra,* 408 U.S. at 189, 92 S.Ct. at 2350.

For the foregoing reasons the court declares that the challenged statutory provision of Section 4–125 exceeds the permissible bounds of the First Amendment. The court further finds that the challenged provision is severable. from the remander of the statute.

Finally, we are asked to enjoin the defendants from enforcing this provision now adjudged to be unconstitutional. We decline to do so. There has been no intimation that our decision will be ignored by the District of Columbia or by any of the other defendants. Entry of a declaratory judgment, therefore seems a fully sufficient remedy at this time. Cf. Atkins v. City of Charlotte, *supra.*

---

19. Chapter 25, § 6 of the District of Columbia Personnel Manual expressly prohibits strikes by employees of the District of Columbia Government.

20. D.C.Code § 4–407 provides in pertinent part:
    "No member of the fire department of the District of Columbia shall directly or indirectly engage in any strike of such department. Upon sufficient proof to the commissioners of the District of Columbia that any member of the fire department has violated the provisions of the section, it shall be the duty of the commissioners . . . to immediately discharge such member from the service."