Joseph A. MESCALL, John R. Petrocelli, Charles D. Korzenowski, and Chicago Police Officers Local No. 1975, United Paperworkers International Union (U.P. I.U.) AFL–CIO, Plaintiffs-Appellees,

v.

James M. ROCHFORD, Superintendent of Police of the City of Chicago, Marlin W. Johnson, Rev. Wilbur N. Daniel, Paul W. Goodrich, Rivera R. Sebastian, Louis F. Peick, and Raymond J. Hauser, Members of the Police Board of the City of Chicago, Defendants-Appellants.

No. 80–2732.

United States Court of Appeals, Seventh Circuit.

Argued June 10, 1981.

Decided July 28, 1981.

Jerome A. Siegan, Asst. Corp. Counsel, Chicago, Ill., for defendants-appellants.

Irving M. Friedman, Chicago, Ill., for plaintiffs-appellees.

Before SWYGERT, Senior Circuit Judge, CUDAHY, Circuit Judge, and EAST, Senior District Judge.*

SWYGERT, Senior Circuit Judge.

This matter comes before the court on defendants' appeal from a summary judgment granted by the district court which held that Rule 54A of the Rules and Regulations of the Chicago Police Department violated plaintiffs' constitutional rights under the First Amendment, and then granted a permanent injunction to restrain the enforcement, operation, and execution of the rule. We affirm the judgment of the district court.

Plaintiffs are three police officers and Local 1975, United Paperworkers International, AFL–CIO. They complain that Rule 54A operates to prevent policemen from exercising their constitutionally-protected rights of freedom of speech and assembly because they cannot join the union of their choice. Rule 54A prohibits the following:

Joining or retaining membership in, or soliciting other members to join any labor

* The Honorable William G. East, United States Senior District Judge for the District of Oregon, is sitting by designation.

organization whose membership is not exclusively limited to full time law enforcement officers. It is provided that this Rule will not apply to civilian members nor to membership in any labor organization in connection with, and relating solely to, approved secondary employment of sworn members.

Plaintiffs allege that the rule suffers from constitutional infirmities because it is overbroad, arbitrary, and irrational. They argue that the infirmities become apparent in light of the fact that the department contends that the rule is necessary to avoid conflicts of interests while at the same time permitting other activities that create similar conflicts.

Defendants, the Superintendent of the Police of the City of Chicago and Members of the Police Board of the City of Chicago, who are responsible for the adoption and modification of the Rules and Regulations of the Police Department, contend that the rule is not unconstitutional. They argue that because the rule is so narrowly drawn as to only restrict the organizing, soliciting, and joining of organizations that are not limited to full time enforcement officers, it constitutes a permissible restriction of policeman activities. They justify this restriction on the grounds that police officers must appear to be impartial and neutral in the handling of labor disputes. According to defendants, affiliation with an international union which accepts non-police officers for membership could result in a potential conflict of interest situation in which a union police officer acts in a labor dispute involving a non-police officer affiliate of the international union to which he belongs.

In affirming the district court, we adopt Judge Roszkowski's reasoning. The district court began its analysis by observing that while police officers have the constitutional right to join a labor union, *Lontine v. Van Cleave*, 483 F.2d 966 (10th Cir. 1973), the courts have held that situations exist where First Amendment rights of public employees, including police officers, must be limited in order to satisfy an important governmental interest. *Civil Service Commission v. National Association of Letter Carriers*, 413 U.S. 548, 93 S.Ct. 2880, 37 L.Ed.2d 796 (1973). The district court, however, recognized that any restrictions on the exercise of First Amendment freedoms must be strictly scrutinized, that the state must show that the limits imposed serve a substantial and legitimate state interest, and that such purpose is achieved in the least restrictive manner. *Shelton v. Tucker*, 364 U.S. 479, 81 S.Ct. 247, 5 L.Ed.2d 231 (1960).

In light of this law, Judge Roszkowski [1] then explained his decision:

> [T]he Court finds that the City could have utilized less drastic means than those set forth under Rule 54A for achieving their purpose of assuring the impartiality and neutrality of police officers involved in a labor dispute.
>
> Rule 54A prohibits membership in an organization "whose membership is not exclusively limited to full time law enforcement officers." Defendants have stated that membership in Local 1975 is prohibited because the Local is affiliated with the Paperworkers International, AFL–CIO. While CPO Local 1975 requires that membership in the Local be restricted to full-time sworn police officers, the International and the AFL–CIO do not restrict their membership on that ground.
>
> The Court does not believe this restriction on affiliation withstands constitutional scrutiny. The Court recognizes that the efficient operation of a Police Department is critical to the protection of life and property. However, the City has chosen an arbitrary, irrational and impermissibly overbroad method of insuring that efficiency.

1. Plaintiffs originally brought action to challenge the enforcement of Chicago Police Department Rules 54A and 54B. The summary judgment motion which related to Rule 54A was granted by Judge Roszkowski on March 30, 1979. A trial was subsequently held before Judge Perry regarding the constitutionality of Rule 54B, a separate police rule. This appeal followed.

In *DeJonge v. Oregon*, 299 U.S. 353, 57 S.Ct. 255, 81 L.Ed. 278 (1937), the Supreme Court recognized that legislative intervention in the first amendment context must be limited to abuses of first amendment rights and must not curtail the right itself. Furthermore, the Court noted:

"The question, if the rights of free speech and peaceable assembly are to be preserved, is not as to the auspices under which the meeting is held but as to its purpose; not as to the relations of the speaker, but whether their utterances transcend the bounds of the freedom of speech which the Constitution protects." 299 U.S. at 365.

By choosing to limit first amendment rights by identifying the groups in which membership is forbidden, the City has chosen impermissible and drastic means to achieve their purpose.

As Judge Decker noted in denying defendants' motion to vacate the preliminary injunction, several courts have "concluded that the identity of the union which the officers seek to join or with which they seek affiliation cannot constitutionally be the basis for limitation on their freedom of association." (Memorandum Opinion of May 3, 1976, p. 7.) *See Police Officers Guild, National Union of Police Officers v. Washington*, 369 F.Supp. 543 (D.D.C.1973) (Three–Judge Court) (prohibition on membership in a union affiliated with a union asserting the right to strike was unconstitutional); *Atkins v. City of Charlotte*, 296 F.Supp. 1068 (W.D.N.C.1969) (Three–Judge Court).

Defendants contend that their legitimate purpose in Rule 54A, to secure impartiality of the police in labor disputes, justified prohibition of membership in certain unions. The Court finds that the purpose for the rule is not sufficient to outweigh the first amendment rights of plaintiffs to be free from arbitrary and overbroad restraints. The Court notes that Rule 54A itself contains an exception for membership in unions which admit non-police officers when that membership is related to approved secondary employment. While the permission for secondary employment by a police officer is revoked during a labor dispute involving his off-duty employment, a police officer could be called upon to act at the scene of a dispute involving the union to which he belongs in relation to that secondary employment. Yet, Rule 54A permits this potential dual allegiance. Clearly, the conflict envisioned by defendants is not presented merely by membership in Local 1975. Furthermore, the relationship between Local 1975 and another Paperworkers Local is remote and tenuous in that each Local is an autonomous organization and the protections inherent in the police officers' duty to enforce the laws without discrimination would serve to minimize the fears of defendants in this regard.

The Court also notes that officers are allowed to join civic, fraternal, ethnic and patriotic organizations which conduct parades and demonstrations requiring the presence of police officers in their official capacity. In such a situation an officer could be called upon to enforce the law against the members of the organization to which he belongs; yet, the City has not chosen to restrict police membership in those organizations. Consequently, the Court concludes that the limitations of Rule 54A are arbitrary and irrational and that the City had failed to justify the necessity for limiting first amendment freedoms by identifying particular *groups* which police officers may not join. Therefore, the Court concludes that Rule 54A is unconstitutional. (footnotes omitted.)

It is clear that Rule 54A will hardly make potential conflicts disappear. As the district court noted, police officers are allowed to join other groups such as social, political, and ethnic organizations to which police officers undoubtedly have some allegiance and which conduct parades and demonstrations. The record shows that in a five-year period (1971–76), these other groups held nearly ten times as many demonstrations,

parades, open-air meetings, and street closings than did labor organizations. It seems reasonable to speculate that these more frequent situations could create an even greater conflict of interest than if a non-police affiliate of the local union went on strike.

Also, as the district court noted, police must temporarily resign from secondary employment if that union strikes. A conflict of interest, however, may well remain. The policemen will still have a pecuniary interest in the situation because he will presumably wish to return to his job. Other unchecked conflicts exist should a strike develop in a business or company in which a policeman owns stock, knows the owners, or maintains some type of interest. Moreover, conflicts for policemen in labor disputes may originate from attitudes and prejudices in regard to matters of race, sex, and political ideology. In short, it is apparent that conflicts of interest exist and that Rule 54A alone will not make police neutral in a labor dispute situation.

Neutrality is an important attribute of policemen because they are sworn to maintain law and order in our society regardless of the identity of the people involved. The city maintains that Rule 54A helps to ensure that this goal of neutrality is achieved. An abridgement of one's constitutional rights, however, must be approached with extreme caution. It appears to this court unreasonable and arbitrary for the city to selectively choose this one narrow area in which to enforce neutrality. Therefore, we hold that Rule 54A is an unconstitutional limitation of a policeman's First Amendment right to freedom of speech and assembly.

AFFIRMED.

CUDAHY, Circuit Judge, concurring:

In every attempt to regulate the First Amendment associational activities of its public employees, a state or municipality is necessarily caught between the Scylla of an overbroad regulation and the Charybdis of a pattern of exemptions that renders the regulation arbitrary and irrational. The more narrowly the regulation is drawn to avoid a challenge of overbreadth, the more likely it is that the regulation will fail to achieve its purposes and will be deemed arbitrary because of areas excluded from coverage. The instant regulation fails under the Constitution because it is both overbroad and in particular instances arbitrary. I thus concur in the result reached by the majority. I write separately, however, to emphasize what I perceive as the most important infirmities in the statute.

The regulation is overbroad to the extent that it precludes a police union from affiliating with a national labor federation.[1] Cf. *Atkins v. City of Charlotte*, 296 F.Supp. 1068 (W.D.N.C.1969) (three-judge court). The mere affiliation of an all-police union with the AFL–CIO or some other national federation presents a much less aggravated possibility of conflict. I believe further that an arrangement wherein a police officers' organization is an *independent all-police division* of an international union could not be constitutionally precluded. Cf. *Police Officers' Guild v. Washington*, 369 F.Supp. 543 (D.D.C.1973) (three-judge court).

Rule 54A is also overbroad in that it bans membership in all labor organizations with non-police members, even those organizations whose non-police members assert no right to strike. As was stated by counsel for the defendants at oral argument, the critical concern of the City is the divided loyalty of a police officer called upon to cross a picket line, which his union membership requires him to respect, in the course of his official duties. The possibility of such a conflict of interest is greatly lessened, however, if the non-police members of the union are, for example, other government employees denied the right to strike.

1. Both the record and the statements at oral argument indicate that this kind of affiliation would be prohibited by Rule 54A.

This kind of police/non-police affiliation in a single union is not unlikely given the common interests shared by the two groups. Rule 54A is overbroad to the extent that it prohibits such a joint union.

It may also be (but this seems less clear) that the secondary employment exception to the Rule is not tailored narrowly enough to avoid rendering the Rule arbitrary. Although the onset of a strike would automatically terminate a police officer's approval for secondary employment, as a practical matter his interest would remain aligned with the other striking employees working for his secondary employer. The temporary hiatus might not change the public's perception of a conflict of interest, one of the major reasons for Rule 54A. And the police officer would surely benefit from whatever pecuniary gains might be secured as a result of the strike.

As for certain other reasons asserted by the majority for striking down Rule 54A, with all respect, I question for the most part their weight and significance. Membership in social or ethnic organizations involves no duty comparable to the obligation of a member of a union not to cross his union's picket line. Further, as stockholders of a struck business, police officers bear no obligation to deal with a labor dispute in any way similar to their obligation as union members to respect the picket line of their own union. The exceptions or gaps that allow these types of speculative "conflicts" do not in my view render the Rule arbitrary or irrational.