Dennis P. BRENNAN, as President of the Detectives Endowment Association of the City of New York Inc., and the Detectives Endowment Association of the City of New York, Inc., Plaintiffs,

v.

Edward I. KOCH, as Mayor of the City of New York, The City of New York, The Office of Municipal Labor Relations of the City of New York and the Office of Collective Bargaining of the City of New York, Defendants.

No. 81 Civ. 4770 (JES).

United States District Court,
S.D. New York.

May 23, 1983.

Thomas W. Gleason, New York City, for plaintiffs; Ernest L. Mathews, Jr., Charles R. Goldburg, Kevin Marrinan, New York City, of counsel.

Malcolm D. MacDonald, New York City, for Defendant Office of Collective Bargaining; Steven C. DeCosta, New York City, of counsel.

Frederick A.O. Schwarz, Jr., Corp. Counsel, New York City, for defendants City of New York, Mayor Koch and Office of Mun. Labor Relations; Marilyn Richter, Asst. Corp. Counsel, New York City, of counsel.

## OPINION & ORDER

SPRIZZO, District Judge.

The Detective Endowment Association, a labor organization which is the certified bargaining agent for all police department detectives employed by the City of New York ("DEA"), and Dennis P. Brennan, its president, commenced this action against the City of New York (the "City"), Edward I. Koch, its mayor, the Office of Municipal Labor Relations[1] ("OMLR") and the Office of Collective Bargaining[2] ("OCB") seeking a declaratory judgment that § 1173–10.0(b) of the New York City Collective Bargaining Law, New York City Administrative Code ("CBL 1173"), is unconstitutional. The statute provides:

> No organization seeking or claiming to represent members of the police force of the police department shall be certified if such organization (i) admits to membership, or is affiliated directly or indirectly with an organization which admits to membership, employees other than mem-

bers of the police force of the police department, or (ii) advocates the right to strike.

On May 27, 1981 the DEA's delegate body voted to affiliate with the International Longshoremen's Association, AFL–CIO ("ILA") which admits to membership employees other than members of the police force and which advocates the right of non-municipal employees to strike. Subsequently, plaintiff Brennan notified defendants of the DEA's intention to affiliate with the ILA. Defendants advised plaintiffs that, in their view, the proposed affiliation would violate the provisions of CBL 1173, Statement of Stipulated Material Facts at para. 8, and that, if such affiliation were effected, the OMLR would take appropriate action to revoke the DEA's certification, *id.* at para. 9.

Plaintiffs thereupon commenced the instant action for a judgment declaring that the statute is unconstitutional both on its face and as about to be applied to them in that it deprives them of freedom of association and equal protection of the laws in violation of the first and fourteenth amendments. Plaintiffs also seek to enjoin defendants from revoking the DEA's certification. The parties have cross-moved for summary judgment.[3]

Plaintiffs contend, and defendants do not dispute, that the first amendment protects their right to join labor organizations. They argue that CBL 1173 impermissibly burdens that right by conditioning the benefit of certification upon their forbearing to affiliate with the ILA. In support of their

---

1. The Office of Municipal Labor Relations is that branch of the Mayor's Office which represents the City and its municipal agencies and departments in all labor matters involving municipal labor organizations. Defendant OCB's Memorandum of Law in Support of Cross-Motion for Summary Judgment 2.

2. The Office of Collective Bargaining is a neutral labor relations agency established pursuant to Chapter 54 of the New York City Charter. It is comprised, *inter alia,* of a Board of Collective Bargaining and a Board of Certification, which boards are charged with carrying out duties

delegated to them under the New York City Collective Bargaining Law ("NYCCBL"), New York City Administrative Code § 1173–1.0 *et seq.*

The Board of Certification is empowered, *inter alia,* to decertify an employee organization which becomes ineligible for certification. New York City Administrative Code § 1173–5.-0(b)(3); Statement of Stipulated Material Facts at paras. 3–5.

3. Defendants Koch, the City and the OMLR and defendant OCB have filed separate cross-motions for summary judgment.

argument plaintiffs rely on a long line of cases which illustrate the well settled principle that a state may not constitutionally condition the grant of a privilege or benefit upon the relinquishment of a first amendment right. *See, e.g., Sherbert v. Verner,* 374 U.S. 398, 83 S.Ct. 1790, 10 L.Ed.2d 965 (1963).

While plaintiffs concede that the statute's impact on their associational freedoms is indirect, Transcript of Oral Argument at 6 (hereinafter "Tr. ___"), they argue that any state statute which impinges upon first amendment rights, even indirectly, must be strictly scrutinized and must constitute the least restrictive means of promoting a compelling state interest.[4] Plaintiffs further argue that the governmental interest advanced in support of CBL 1173, to wit, maintaining the existence and appearance of impartiality, discipline and loyalty in the police force, *see* Affidavit of John Guido in Support of Cross-Motion for Summary Judgment by City Defendants; Affidavit of Arvid Anderson in Support of [Defendant OCB's] Cross-Motion for Summary Judgment ("Anderson Affidavit"); Tr. at 22–23, does not rise to the level of a compelling state interest and has been consistently rejected by courts as a sufficient basis for denying first amendment rights.

Defendants contend that, since CBL 1173 neither prohibits nor precludes membership in or affiliation with any labor organization, it does not constitute an infringement on plaintiffs' associational freedoms, but rather merely a limitation upon their bargaining rights, which, as even plaintiffs concede, are not protected by the first amendment. Defendants conclude, therefore, that CBL 1173 need only be rationally related to a legitimate government interest.

In *International Brotherhood of Teamsters, Local 344 v. NLRB,* 568 F.2d 12 (7th Cir.1977) (hereinafter *"Teamsters"),* the Seventh Circuit considered and rejected a first amendment argument virtually identical to that made here.[5] In upholding the constitutionality of § 9(b)(3) of the National Labor Relations Act, 29 U.S.C. § 159(b)(3) ("§ 9(b)(3)"), which precludes certification of an organization which represents guards if that organization admits to membership or affiliates with an organization which represents non-guards, the Seventh Circuit observed that the statute does not restrict the guards' right to join the union, to associate with non-guards or to receive voluntary bargaining rights. Characterizing the degree of infringement of first amendment rights as "incidental and minimal" the Seventh Circuit held that, when balanced against the public policy promoted by the statute, *i.e.,* to avoid conflicting loyalties in persons employed to protect an employer's property, the infringement was too insubstantial to render the statute unconstitutional. *Teamsters,* 568 F.2d at 20–21.

■ CBL 1173, like § 9(b)(3), is narrowly drawn and does not directly interfere with the exercise of first amendment rights. It does not prohibit membership in any labor organization. *See, e.g., Mescall v. Rochford,* 101 L.R.R.M. 3136 (N.D.Ill.1979), *aff'd,* 655 F.2d 111 (7th Cir.1981); *Police Officers' Guild v. Washington,* 369 F.Supp. 543 (D.D.C.1973); *Melton v. City of Atlanta,* 324 F.Supp. 315 (N.D.Ga.1971). Nor does it threaten the legal existence of the union or the jobs of its members if an affiliation with a non-police union is effected. Indeed, it does not even restrict the DEA from receiving voluntary bargaining rights. On the contrary, like § 9(b)(3), it restricts only the benefit of certification. *See also Rogoff v. Anderson,* 34 A.D.2d 154, 310 N.Y. S.2d 174, 175 (1st Dep't 1970), *aff'd,* 28 N.Y.2d 880, 322 N.Y.S.2d 718, 271 N.E.2d 553, *appeal dismissed for failure to state a federal question,* 404 U.S. 805, 92 S.Ct. 108,

---

4. CBL 1173 was enacted by New York City's local legislature, the City Council. Of course, statutes enacted by municipalities are subject to the same scrutiny as statutes enacted by the state.

5. The Seventh Circuit considered the constitutionality of § 9(b)(3) in the context of the plaintiff union's action to set aside an order of the National Labor Relations Board requiring it to stop picketing.

30 L.Ed.2d 37 (1971). Plaintiffs concede that they have no constitutional right to affiliate for the purpose of certification,[6] Plaintiffs' Reply Memorandum 2, and have cited no authority to support the proposition that they have a constitutional right to affiliate with the ILA *and* retain the DEA's certification. Since CBL 1173's impact upon speech or associational rights is at best indirect or insubstantial, the statute must be sustained unless plaintiffs have met their burden of demonstrating that it is arbitrary or irrational. *See Kelley v. Johnson*, 425 U.S. 238, 247, 96 S.Ct. 1440, 1445–1446, 47 L.Ed.2d 708 (1976).

While plaintiffs contend that CBL 1173 is not reasonably related to maintaining an impartial police force and that defendants' fears about prospective conflicts of interest are baseless, plaintiffs have failed to carry that burden.

The City's interest in maintaining the existence and appearance of police neutrality is fully as substantial as the interest advanced in support of § 9(b)(3).[7] Police occupy a key role in our society by virtue of their responsibility for law enforcement, *see, e.g., Baker v. Cawley*, 459 F.Supp. 1301 (S.D.N.Y.1978), *aff'd*, 607 F.2d 994 (2d Cir. 1979), and their loyalties are clearly as important, if not more important, to the City than the loyalties of guards to their employers. This Court cannot, therefore, conclude that the City may not properly recognize and prevent the divided loyalties that could develop if police officers were called upon to police labor disputes involving labor groups with which they were affiliated.

Nor can it be constitutionally dispositive that other legislators in other jurisdictions have not enacted similar legislation, especially since plaintiffs have proffered no evidence to show that in those jurisdictions the factual situations are similar to that which exists in the City. *See* Anderson Affidavit at para. 21. In short, the City must be allowed the freedom to legislate with respect to its own situation and cannot constitutionally be precluded from doing so merely because other legislators in other places may have made equally rational decisions to the contrary. Moreover, plaintiffs have not established that the failure of such other legislators to enact such legislation was prompted, even in part, by their belief that loyalties resulting from such relationships do not interfere with job performance.

Plaintiffs' conclusory assertion that police officers have long been members of or affiliated with non-police organizations without any perceptible effect on their ability to perform their duties is devoid of factual

---

**6.** It is well settled that the Constitution imposes no duty upon employers to recognize or bargain with labor organizations. *See, e.g., Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 312–14, 99 S.Ct. 2301, 2316–2317, 60 L.Ed.2d 895 (1979); *Smith v. Arkansas State Highway Employees, Local 1315*, 441 U.S. 463, 99 S.Ct. 1826, 60 L.Ed.2d 360 (1979) (per curiam); *Rogoff v. Anderson*, 34 A.D.2d 154, 310 N.Y.S.2d 174, 175 (1st Dep't 1970), *aff'd*, 28 N.Y.2d 880, 322 N.Y.S.2d 718, 271 N.E.2d 553 *appeal dismissed for failure to state a federal question*, 404 U.S. 805, 92 S.Ct. 108, 30 L.Ed.2d 37 (1971).

**7.** In the early 1950's, when the City embarked upon a sweeping evaluation and revision of its labor relations practices, it undertook several studies to determine possible formats for labor relations in the private sector and to recommend procedures for implementing a comprehensive, enlightened program for labor relations between the City and its employees. These studies emphasized the need for special concern in dealing with members of the police force. Indeed, a study by the Commissioner of the New York City Department of Labor stated:

> It is argued that in the nature of their authoritative duty to maintain the peace and protect property, members of the police force either should not be allowed to join any labor organization at all or certainly not a labor organization affiliated with any other outside union. The rationale of the argument is that such membership might expose the members of the force to a dual and possibly conflicting allegiance in the event of labor strife which they are called upon to police. It is contended that this would be especially dangerous in cases of jurisdictional labor disputes, as witness the recent waterfront stoppage with its compelling demands for vigilant yet neutral police action.

Preliminary Report on Labor Relations in the Municipal Service, June 9, 1954, at 5, Exhibit A to the Affidavit of Marilyn Richter appended to Notice of Cross-Motion for Summary Judgment by City Defendants.

support. However, even if some factual support for that assertion existed, the absence of such experience in the past would still not be sufficient to demonstrate that the City acted irrationally or arbitrarily in precluding such problems in the future. The scope of legislative rationality is not, cannot and should not be restricted to remedying evils that have already developed, so long as the anticipation of future problems is reasonable.

Finally, the argument that defendants' involvement with the Municipal Labor Committee [8] and the Uniformed Forces Coalition [9] proves that defendants are insincere and that their fears are baseless is without merit. While in encouraging the existence of organized labor groups and coalition bargaining the City may also be encouraging cooperation between police and non-police unions, this Court cannot conclude that that conduct establishes that CBL 1173 is unconstitutional. Cooperation between police and non-police unions is clearly not the same as formal affiliation, and the dangers presented by the former are not nearly comparable to those raised by the latter.

On balance, therefore, the public interest advanced by the statute in question outweighs any minimal infringement on plaintiffs' associational rights. The cases relied on by plaintiffs are inapposite. In each of these cases the restrictions imposed on speech and association were both direct and substantial. *See, e.g., Police Officers' Guild v. Washington*, 369 F.Supp. 543 (D.D.C. 1973).

There remains for consideration plaintiffs' argument that CBL 1173 deprives them of equal protection of the laws because (1) it subjects only unions representing police officers of the police department to its terms whereas other police groups such as the New York State Police ("State Police"), the New York City Transit Authority Police ("Transit Police") and the New York City Housing Authority Police ("Housing Police") are not similarly constrained; and (2) it applies only to police unions.

Since plaintiffs have made no showing that the statute directly and substantially impinges on fundamental rights [10] or that they are members of a suspect class, the appropriate standard of review is whether

---

**8.** The Municipal Labor Committee is a voluntary association of representatives of qualified public employee organizations. It disseminates information among its member unions, formulates general collective bargaining strategies, takes policy positions on various labor issues and participates with the City and the OCB in periodic reviews of the effectiveness of procedures under the NYCCBL and the Revised Consolidated Rules of the OCB, Affidavit of Arvid Anderson in Response to Plaintiff's Reply at paras. 5–7 ("Anderson Reply Affidavit"). It is also charged with various statutory responsibilities. *See* N.Y.C. Charter §§ 1171, 1174(a); N.Y. Unconsol. Laws § 7390(8)(a) (McKinney 1979).

The MLC does not possess the status of a certified bargaining representative under the NYCCBL. Anderson Reply Affidavit at para. 4. It neither engages in collective bargaining with the City on behalf of its members nor processes grievances to enforce any labor contract. *Id.* at para. 8; *accord,* Affidavit of James Hanley in Response to Plaintiffs' Reply Affidavit at paras. 7–10 ("Hanley Affidavit").

**9.** The UFC is an informal, voluntary coalition of various labor organizations representing certain of the City's uniformed employees. While the UFC negotiates with the City on behalf of its member groups for a pattern of wage increases and other economic terms of employment, the City conducts all bargaining regarding hours, working conditions and other non-economic terms and conditions of employment directly with each constituent member union. Anderson Reply Affidavit at paras. 10–11. Moreover, each member union must submit to its membership for ratification any agreement negotiated by the UFC. *Id.* at para. 12.

The UFC is not certified as a collective bargaining representative and does not possess any of the rights incident to certification. *Id.* at paras. 11, 13; *accord,* Hanley Affidavit at paras. 11–15.

**10.** Fundamental rights include those rights enumerated in the Bill of Rights and certain others identified by the Supreme Court in caselaw. *See, e.g., Zablocki v. Redhail,* 434 U.S. 374, 98 S.Ct. 673, 54 L.Ed.2d 618 (1978) (right to marry); *Shapiro v. Thompson,* 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969) (right to interstate travel); *Harper v. Virginia Bd. of Elections,* 383 U.S. 663, 86 S.Ct. 1079, 16 L.Ed.2d 169 (1966) (right to equal voting opportunity); *Griffin v. Illinois,* 351 U.S. 12, 76 S.Ct. 585, 100 L.Ed. 891 (1956) (right of access to criminal appeal).

the classifications are rationally related to a legitimate government interest. *San Antonio Independent School District v. Rodriguez,* 411 U.S. 1, 40, 93 S.Ct. 1278, 1300, 36 L.Ed.2d 16 (1973).

■ At the outset it should be noted that disparities in treatment between the New York City Police Department and the State Police and the Transit Police have no relevance to the deprivation of equal protection claim made here. Neither the State Police nor the Transit Police are employed by the City and thus neither is subject to the provisions of CBL 1173.[11] No alleged denial of equal protection claim can properly be founded on alleged disparities in treatment between those who are subject to the provisions of a challenged statute and those who are not.

With respect to the Housing Police, it is not clear that any disparity in treatment has, in fact, been established. The New York City Housing Authority has elected to subject its employees to *all* the provisions of the New York City Collective Bargaining Law, and therefore, as defendants point out, has presumably subjected the Housing Police to the restriction contained in CBL 1173. Defendant OCB's Memorandum of Law in Support of Cross-Motion for Summary Judgment 14. The record is, therefore, devoid of evidence that defendants would apply CBL 1173 differently to these two police organizations.

Even assuming arguendo that the Housing Police and the Transit Police were City employees and that the City nevertheless excluded them from the ambit of CBL 1173, this Court would still not find that plaintiffs had been denied equal protection of the laws. Both the Transit Police and the Housing Police perform their functions primarily within the facilities and instrumentalities of their respective employers, to wit, subway cars and stations, buses and public housing developments. Since labor disputes

rarely occur on this property, the potential for conflicting loyalties is not comparable to that faced by police officers. Therefore, the Court finds that treating New York City police and other police groups in the City differently would be entirely rational.[12] *See Baker v. Cawley,* 459 F.Supp. at 1304–05.

Finally, in view of the duties with which police officers are charged, the Court also finds that it is rational to seek to preserve and promote labor neutrality in the police department while not similarly seeking to promote it in other municipal agencies. *See id; Vorbeck v. McNeal,* 407 F.Supp. 733, 739 (E.D.Mo.), *aff'd mem.,* 426 U.S. 943, 96 S.Ct. 3160, 49 L.Ed.2d 1180, (1976). Thus, no denial of equal protection of the laws claim may properly be grounded upon the fact that CBL 1173 does not apply to non-police unions.

Plaintiffs' motion for summary judgment is therefore denied. Defendants' cross-motions for summary judgment are granted.

It is SO ORDERED.

---

**11.** The Transit Police are employed by a state public authority and are within the jurisdiction of the New York State Public Employment Relations Board. OCB's Memorandum at 14.

**12.** It should also be noted that, even if the State Police were City employees, the alleged dispari-

ty in treatment would still be rational. The nature of the jurisdiction of the State Police and the scope of their routine duties is far less likely to involve them in policing labor disputes.